Commonwealth *v.* Terenda, Appellant.

Argued March 14, 1972.  Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Wendell G. Freeland,* with him *Lichtenstein & Bartiromo,* for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, March 16, 1973:

David Terenda, the appellant, was convicted in 1968 of voluntary manslaughter following a jury trial in Allegheny County. Post-trial motions were denied and a sentence was imposed of not less than six nor more than twelve years. The judgment of sentence was affirmed in *Commonwealth v. Terenda,* 433 Pa. 519, 252 A. 2d 635 (1969). The same private counsel, now deceased, represented the appellant during trial and on his direct appeal to this Court. In 1971 new counsel for the appellant filed a petition under the PCHA

ences to the appellant. The appellant also argues that the unfair prejudice was not eliminated by cautionary instructions given to the jury. Additionally, the defendant claims that the failure to previously raise his claim does not constitute a waiver by the appellant because previous counsel's failure to raise the issue amounted to the ineffective assistance of counsel. We agree and remand for a new trial.

As rebuttal witnesses, the prosecution called Ronald Bellan and George Johnson, who were indicted along with the appellant for the same killing. They were to be tried at a later date. When Ronald Bellan was called as the first witness of the two, the trial judge requested a sidebar conference and inquired as to whether Bellan had legal counsel present. Bellan's attorney informed the court that his client would assert his privilege under the Fifth Amendment and give only his name and address. The prosecuting attorney was present at the sidebar conference and was aware of the information given to the court by Bellan's counsel.

Bellan took the stand and gave his name. When the prosecution asked about his age, Bellan invoked the Fifth Amendment. The prosecution continued and asked Bellan if he had been in the company of the appellant and the other co-indictee, George Johnson, during the period of time relevant to the killing. Bellan again invoked the Fifth Amendment. The prosecution continued the questioning and asked whether Bellan could identify certain weapons. Once again Bellan refused to answer invoking his Fifth Amendment privilege.

Bellan was then excused and the other co-indictee, George Johnson, was called to the stand by the prosecution. The record shows that Johnson was represented by private counsel and was aware of his right to remain silent. The record also shows that defendant's counsel, who had not entered any specific objection prior to

Bellan's testimony, objected to the calling of Johnson as a witness on two grounds. Defense counsel objected that Johnson's testimony was not proper rebuttal and also objected stating that it was prejudicial to call the two co-indictees as witnesses. Although the court stated that the offered testimony may not be proper rebuttal, Johnson was permitted to take the stand.

The prosecution first asked whether Johnson recalled his whereabouts during the time relevant to the killing. Johnson immediately invoked the Fifth Amendment and refused to answer the question. The prosecution continued and asked Johnson whether he knew the appellant. Johnson answered, "Yes". He was then asked whether he was in the presence of the appellant at the time relevant to the killing. Johnson refused to answer. Next he was asked if he knew Ronald Bellan, the other co-indictee. Johnson admitted that he knew Bellan and was then asked whether he was in Bellan's presence during the time relevant to the killing. Johnson refused to answer.

The testimony by Bellan and Johnson was unfairly prejudicial to the appellant. Prior prosecution testimony indicated that Ronald Bellan and George Johnson were in the company of the appellant at the time of the killing. Thus the witnesses were not strangers to the jury. Under such circumstances, the jury could reasonably have drawn inferences adverse to Bellan and Johnson and transferred these adverse inferences to the appellant. As stated by Professor Wigmore at 8 Wigmore, Evidence §2272, at 426 (McNaughton rev. 1961): "The layman's natural first suggestion would probably be that the resort to privilege in each instance is a clear confession of crime." Since the jury could reasonably have drawn inferences adverse to the appellant, the appellant was entitled to cross-examine the witnesses. This, of course, was impossible, because the witnesses invoked the Fifth Amendment. Once testi-

mony has been presented to a jury from which adverse inferences can be drawn, the appellant cannot be deprived of the opportunity to challenge those inferences in the jury's mind. To so deprive the appellant is to effectively deprive him of his rights to confront the witnesses against him guaranteed by the Sixth Amendment which is applicable to state prosecutions. *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968); *Douglas v. Alabama*, 380 U.S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074 (1965) and *Pointer v. Texas*, 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).

This is not a case where a witness, who is a stranger to the proceeding and whose identity is not known to the jury in relation to the trial, takes the stand and invokes the Fifth Amendment. In this case the jury knew of an alleged crucial relationship between appellant and his co-indictees. There was clearly the danger that inferences adverse to the appellant would reasonably be drawn by the jury. Since the jury could reasonably have done so and the defendant was helpless to challenge the inferences, he was effectively deprived of his confrontation rights under the Sixth Amendment.

An analogous, though reverse, situation was before this Court in *Commonwealth v. Greene*, 445 Pa. 228, 285 A. 2d 865 (1971). In Greene the defendant wished to call a co-defendant to the stand knowing that the co-defendant would plead the Fifth Amendment. The defendant claimed that the co-defendant was the guilty party and desired the jury to hear the co-defendant plead the Fifth Amendment. The trial judge refused to allow the co-defendant to testify before the jury. On appeal, a divided court affirmed the trial judge's decision holding that a jury may not draw any inference from a witness' exercise of his constitutional rights. Although this Court was divided on whether the defense was entitled to have the jury draw inferences

adverse to the prosecution because a defense witness invoked his Fifth Amendment privilege, the Court was unanimous in stating that the jury could not be permitted to make inferences adverse to the defendant as the result of a prosecution witness' invoking his privilege under the Fifth Amendment. That principle is applicable to this case.

We cannot consider the error in this case as harmless. The jury could easily have inferred that the witnesses were invoking the Fifth Amendment because they were guilty and transferred this inference to the appellant. Other prosecution testimony indicated that the appellant and co-indictees were acting in concert on the night of the killing. The possibility that the jury may have reasonably inferred an admission of guilt through a transfer process to the appellant is highly prejudicial. See *Bruton v. United States, supra* and *Douglas v. Alabama, supra.*

There is an additional reason why we cannot overlook the error. Convictions should not be obtained with any suspicion of prosecutorial misconduct. In this case, the prosecution and the court knew that the co-indictees would invoke the Fifth Amendment. The witnesses should, therefore, not have been permitted to take the stand. The error was compounded when the witnesses were on the stand because the questioning did not cease after the first invocation of the Fifth Amendment. The questioning continued with a clear and deliberate attempt to plant in the jury's mind, knowing that the Fifth Amendment would be invoked, evidence of an association between the witnesses and the appellant during the alleged time of the killing. A conviction obtained by the prosecution by the use of such "testimony" cannot be allowed to stand. Both prosecutorial misconduct and the violation of a defendant's rights under the Sixth Amendment have been recognized as independent grounds for invalidating convictions in

circumstances similar to those present in this case. See *Namet v. United States,* 373 U.S. 179, 10 L. Ed. 2d 278, 83 S. Ct. 1151 (1963) ; *United States v. King,* 461 F. 2d 53 (8th Cir. 1972) ; *San Fratello v. United States,* 340 F. 2d 560 (5th Cir. 1965) ; *Fletcher v. United States,* 118 U.S. App. D.C. 137, 332 F. 2d 724 (D.C. Cir. 1964) ; *United States v. Tucker,* 267 F. 2d 212 (3rd Cir. 1959) ; *United States v. Maloney,* 262 F. 2d 535 (2nd Cir. 1959) ; and ABA Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function, §5.7(c) (Approved Draft, 1971). Cf. *Commonwealth v. Haideman,* 449 Pa. 367, 296 A. 2d 765 (1972).

It is true that the trial judge attempted to cure the error by telling the jury that the co-indictees' refusal to testify was not to be considered as evidence for or against the defendant. Such a cautionary instruction cannot be effective as a substitute for cross-examination when the adverse and prejudicial inference, which must be eliminated from the jury's mind, is an inference that the co-indictees of the appellant have admitted guilt and such inference may be transferred adversely to the appellant.

In *Bruton,* which involved an analogous situation, the ineffectiveness of a cautionary instruction to the jury was thoroughly considered. The Court in *Bruton* said: ". . . 'The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction. . . .' " 391 U.S. at 129, 20 L. Ed. 2d at 481.

The Court in *Bruton* in commenting on the significance of *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964), also said: ". . . 'Although Jackson was directly concerned with obviating any risk that a jury might rely on an unconstitutionally obtained confession in determining the defendant's guilt, its logic extends to obviating the risks that the

jury may rely on any inadmissible statements. . . .' "
391 U.S. at 130, 20 L. Ed. 2d at 482.

The thrust of *Bruton* is applicable to the circumstances before us, The invoking of the Fifth Amendment in the jury's presence by two co-indictees known to the jury as alleged actors with the appellant during the night of the killing was too strongly prejudicial to be overcome by a cautionary instruction.

Appellant claims that the issue concerning the testimony of his two co-indictees raised in his PCHA petition was not waived by his previous counsel's failure to raise the issue in post-trial motions or in appellant's direct appeal. Appellant argues that previous counsel's failure to raise the issue constituted the ineffective assistance of counsel. We agree.

Appellant's previous counsel, who was the same for the trial and for his direct appeal, failed to object when Bellan took the stand although he did object when Johnson took the stand. Counsel also failed to raise the issue in post-trial motions and in the direct appeal.

In *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A. 2d 349 (1967), we held that the issue of ineffective assistance of counsel is to be determined by whether or not *the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest.* It is difficult in this case to attribute to appellant's previous counsel any reasonable basis for deliberately failing to raise the issue now raised by the appellant's present counsel.

If trial counsel had any reason for failing to object when Bellan took the stand, he surely would have had the same reason when Johnson took the stand. Counsel, however, although failing to object to Bellan's testimony did object to Johnson's testimony and stated that the calling of both co-indictees was prejudicial. If anything, it appears that counsel's failure to object to

Bellan's testimony was an oversight and not a deliberate choice.

In view of the extremely prejudicial nature of the testimony by the two co-indictees at the trial, we are unable to ascertain any reason why trial counsel failed to raise the issue in post-trial motions and in the direct appeal. In view of trial counsel's objections and statements before Johnson's testimony, it is obvious that trial counsel realized the prejudicial nature of the testimony by the co-indictees. Previous counsel's failure to raise the issue could not possibly have had any reasonable basis designed to effectuate his client's interest and, therefore, constituted ineffective assistance of counsel denying appellant his constitutional right to assistance of counsel. Thus the issue was properly raised in the appellant's PCHA petitions. See *Commonwealth v. Jones*, 447 Pa. 228, 286 A. 2d 892 (1971), and *Commonwealth v. Cheeks*, 429 Pa. 89, 239 A. 2d 793 (1968).

The order of the trial court denying post-conviction relief is reversed. The judgment of sentence is reversed and a new trial ordered.

Mr. Chief Justice JONES, Mr. Justice EAGEN, Mr. Justice O'BRIEN and Mr. Justice POMEROY concur in the result.