## Commonwealth *v.* Dutton, Appellant.

Argued April 28, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

548

reargument refused August 9, 1973.

*Charles A. Lord* and *John B. Day,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *James J. Wilson,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, July 2, 1973:

Appellant, Joseph Dutton, was convicted of murder in the first degree, burglary and aggravated robbery on January 28, 1970, following a jury trial. Post-trial motions were denied. A sentence of life imprisonment was imposed on December 1, 1971, and this appeal followed.

Prior to trial, appellant requested the suppression of an inculpatory statement allegedly given by the appellant even though he refused to sign the statement. The trial court refused to suppress the statement. In his post-trial motions, appellant again claimed that the statement was involuntary and was a product of un-

necessary delay between arrest and preliminary arraignment.

Appellant was arrested without a warrant at approximately 10:05 a.m., at his home on January 28, 1969. Approximately seven hours earlier, a night watchman had been killed at a laundry company. Appellant was taken to police headquarters and a first round of interrogation began at 10:32 a.m. He was given advice concerning his constitutional rights and denied any involvement in the crime. The questioning of the appellant continued throughout the day and did not end until approximately 10:18 p.m., at which time the appellant refused to sign a formal statement. Appellant was not taken before a magistrate until the following day. The exact time is not clear from the record, but it was apparently at 12:41 p.m., approximately twenty-six hours after his arrest.

During the first eight hours after appellant's arrest, he was subjected to six different interrogation periods. The shortest period was approximately a half-hour and the longest period was approximately two hours. After the first three interrogation periods, a new officer began his participation in the interrogation process. After the first five interrogation sessions, another officer, who had not participated in the first five interrogation sessions, began his participation in the interrogation process. At one point, the appellant was given a polygraph test. During the first five interrogation sessions, appellant continually denied any involvement in the crime. After the sixth interrogation session, involving three officers, had been in progress continually for approximately an hour and a half, appellant, for the first time, made oral statements admitting involvement in the crime. This was approximately eight hours after his arrest and following six separate interrogation sessions throughout the day during which confrontation took place between the appellant and at least six differ-

ent police officers. A seventh interrogation session then followed for approximately three hours. At about 10:18 p.m., the appellant was asked to sign a formal statement and refused. He did write thereon the words *refused to sign* and his initials.

The appellant claims that his statements were the product of an unnecessary delay between his arrest and his preliminary arraignment and violated Rule 116(a) of the Pa. R. Crim. P. Rule 116(a), in effect at that time (now covered by Rule 118), provided: "When a defendant has been arrested with or without warrant, in a court case . . . he shall be taken without unnecessary delay before the proper issuing authority for a preliminary arraignment."

In *Commonwealth ex rel. Fox v. Maroney*, 417 Pa. 308, 207 A. 2d 810 (1965), we specifically called attention to the requirement of taking the person arrested without unnecessary delay before the proper issuing authority for a preliminary arraignment. We there said that unnecessary delay is ". . . regrettable and to be discouraged. . . ." In *Commonwealth v. Futch*, 447 Pa. 389, 290 A. 2d 417 (1972), we held that a violation of the Rules requires that the trial court ". . . exclude all evidence obtained during 'unnecessary delay' except that which . . . has no reasonable relationship to the delay whatsoever." See also *Commonwealth v. Tingle*, 451 Pa. 241, 301 A. 2d 701 (1973). In this case the delay which occurred between arrest and arraignment was clearly related to the statements obtained. The appellant for approximately eight hours denied any involvement. It was only after six interrogation sessions involving various officers that the appellant made any inculpatory statement. See *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 148-156, 239 A. 2d 426, 429-434 (1968). The delay in this case was not necessary for any administrative processing; neither was the delay caused by the unavailability of a magistrate. The

interrogation of the appellant throughout the day took place on the second floor of a building in which magistrates were located on the first floor. This was known to the police. We must conclude under these circumstances that the unnecessary delay was related to the evidence.

Judgment of sentence reversed and case remanded for a new trial.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

In *Commonwealth v. Futch,* 447 Pa. 389, 290 A. 2d 417 (1972), this Court adopted "the federal approach" to evidence obtained during an unnecessary delay prior to arraignment, and announced a procedural rule excluding all evidence so obtained from admission at trial.[1] Earlier this year, in *Commonwealth v. Riggins,* 451 Pa. 519, 304 A. 2d 473 (1973), we carefully considered the applicability of the *Futch* decision to a confession obtained during a period of unnecessary delay following an arrest in 1969 and, refusing implicitly to hold such a confession without more inadmissible, we instead applied the "totality of the circumstances" approach of our pre-*Futch* law.[2] Today, however, the Court ignores *Riggins* and removes all restrictions on the retroactive application of *Futch,* at least as far back

---

[1] Congress repudiated this approach by enacting the Omnibus Crime Control and Safe Streets Act of 1968, Act of June 19, 1968, Pub. L. 90-351, 82 Stat. 210, 18 U.S.C. §3501.

[2] Although the appellant in *Riggins* made but scant mention of delay in arraignment, several members of this Court during oral argument indicated to the Commonwealth's attorney that *Futch* might well be involved. Consequently the Commonwealth sought and obtained leave to file a supplemental brief on the application of *Futch* to an arrest and delay in arraignment occurring in 1969, prior to the effective date of Pa. R. Crim. P. 118 (eff. May 1, 1970). This Court's refusal to apply the *Futch* rule in *Riggins* can only signify that we there rejected the very argument for retroactivity which is today espoused by the majority.

as January 1, 1965, the effective date of former Rule 116 of The Pennsylvania Rules of Criminal Procedure (predecessor of the present Rule 118).[3] In my opinion this may well prove to be costly in terms of the administration of justice and futile in terms of correction of police procedures. I must dissent.

Like its federal prototypes, *McNabb v. United States,* 318 U.S. 332, 87 L. Ed. 819 (1943) and *Mallory v. United States,* 354 U.S. 449, 1 L. Ed. 2d 1479 (1957), our decision in *Futch* was not based on constitutional considerations. The exclusionary rule we promulgated was grounded on the Court's supervisory powers over the administration of justice in the courts of this Commonwealth. We have heretofore consistently denied retrospective effect to our supervisory rulings, even as to matters as closely related to the fairness of trial proceedings as jury instructions, see *Commonwealth v. Spencer,* 442 Pa. 328, 275 A. 2d 299 (1971); *Commonwealth v. O'Neal,* 441 Pa. 17, 271 A. 2d 497 (1970); *Commonwealth v. Scoleri,* 399 Pa. 110, 160 A. 2d 215 (1960).

The effective date of a new rule of evidence designed to control police conduct should be determined, in my view, by the same considerations which would govern a novel ruling of constitutional law. See *Fuller v. Alaska,* 393 U.S. 80, 21 L. Ed. 2d 212 (1968). As these have been formulated by the United States Supreme Court, they include: (1) the purpose to be served by the new standards, (2) the extent of the reliance by law enforcement authorities on the old standards, and (3) the effect on the administration of justice of a retroactive application of the new standards. Where on balance these considerations do not

---

[3] The initial mistake in this respect was made in *Commonwealth v. Tingle,* 451 Pa. 241, 301 A. 2d 701 (1973), in which, without discussion, the rule of *Futch* was applied to a 1971 arrest. The error of *Tingle* is thus compounded in the case at bar.

favor retroactivity, the current federal practice is to apply the new standard only where prohibited conduct takes place after the announcement of the rule. *Desist v. United States,* 394 U.S. 244, 22 L. Ed. 2d 248 (1969) ; *Williams v. United States,* 401 U.S. 646, 28 L. Ed. 2d 388 (1971). Examining *Futch* in this light, I can only conclude that its purpose will be fully realized by a solely prospective application.

The *Futch* exclusionary rule contributes nothing to the certainty of the judicial fact-finding process. As Mr. Justice EAGEN pointed out in his concurring opinion in *Commonwealth v. Tingle,* 451 Pa. 241, 301 A. 2d 701 (1973), the rule is directed entirely to police conduct prior to trial and operates irrespective of the reliability or probative value of the evidence excluded. One may hope that the threat of exclusion will help to deter dilatory or illegal police conduct, but it can hardly be supposed that application of the exclusionary rule to events long past will add anything to the rule's deterrent force for the future. On the other hand, the Court's opinion may have grave repercussions on the administration of justice. No one knows how many prosecutions have been instituted since January 1, 1965 in reliance on our pre-*Futch* rules of admissibility, but there must have been a great many. Now, it appears, any defendant convicted on the basis of evidence which under *Futch* should be excluded is entitled to a new trial, regardless of the fairness of his original trial. I see nothing to be gained from saddling our judicial system with this potentially staggering burden.[4]

---

[4] Admittedly the burden on our judicial system would not be serious if the retroactive effect which the majority gives *Futch* were to be restricted to defendants who have raised the question on post-trial motions or direct appeals which are still pending. This will be the situation if the Court continues, as I believe it should, to limit post-conviction collateral relief to constitutionally based claims, since the rule in *Futch* is not so mandated. Post-

Mr. Chief Justice JONES and Mr. Justice EAGEN join in this dissenting opinion.

conviction relief is so limited in the federal courts and, thus far, has been similarly limited by this Court. See *Commonwealth v. Smulek*, 446 Pa. 277, 284 A. 2d 763 (1971) ; *Commonwealth v. Lowery*, 438 Pa. 89, 263 A. 2d 332 (1970) ; *Commonwealth v. Musser*, 437 Pa. 131, 262 A. 2d 678 (1970). But see *Commonwealth v. Terenda*, 451 Pa. 116, 301 A. 2d 625 (1973), with which *Commonwealth v. DuVal*, 453 Pa. 205, 307 A. 2d 229 (1973) should be compared.