Commonwealth *v.* Wright, Appellant.

Argued November 27, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*William W. Stainton,* with him *John W. Beyer,* and *Arnold, Bricker, Beyer & Barnes,* for appellant.

*James R. Leonard, Jr.,* Assistant District Attorney, with him *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Pomeroy, July 1, 1974:

On the evening of March 22, 1970, three men held up a grocery store in Columbia, Pennsylvania. Appel-

lant, Barry Wright, was subsequently indicted on charges of conspiracy and robbery in connection with the holdup. A Lancaster County jury returned verdicts of guilty on both the conspiracy and robbery counts, and Wright was sentenced to a term of imprisonment of not less than one and one-half nor more than three years. Following denial of post-trial motions, Wright appealed to the Superior Court, which affirmed the judgment of sentence in a per curiam order. We granted allocatur to consider whether it was reversible error to permit one of Wright's alleged confederates to take the stand as a prosecution witness when both the prosecution and the court had notice of the witness' intention to deny the truth of his earlier out-of-court statement inculpating Wright. Finding this procedure both erroneous and potentially prejudicial to appellant, we now reverse, and remand the case for a new trial.

The prosecution called Carroll Hobbs, an alleged participant in the holdup but not a codefendant with Wright, ostensibly to confirm Hobbs' out-of-court statement implicating Wright in the holdup. Before Hobbs took the stand, the jury was excused, and an off-the-record discussion took place at sidebar. At the conclusion of the discussion the following exchange occurred: "THE COURT: Mr. Brubaker offers to call the witness Hobbs who, I think, may deny the truthfulness of a prior statement. MR. BRUBAKER [for the prosecution]: The only purpose I'm calling him for is the truthfulness of the prior statement. MR. HARTING [for the defense]: I object to that because he knows he is going to say no. THE COURT: The ruling is made. He can bring him."

The jury then returned to the courtroom and Hobbs took the stand. In response to the prosecutor's questions, he testified that he had made and signed a three page written statement, but that the statement was not true. Although the statement was marked and identi-

fied as an exhibit, it was not offered in evidence. No reference was made to the content of the statement, and no further testimony was elicited from the witness.

We see no justification for the procedure here followed. Only one legitimate purpose could have been served by the prosecutor's questions: to discover whether Hobbs would stand by his prior statement, or would renounce it. The statement itself was inadmissible against Wright,[1] and there was no reason to bring it to the attention of the jury. Hobbs' testimony not only alerted the jurors to the existence of the statement, but also laid the basis for an inference that it was unfavorable to Wright. Once the prosecution had foreknowledge that Hobbs was likely to disavow the statement, any doubts on this score should have been resolved outside of the presence of the jury. The potential prejudice to the defendant would thus have been easily avoided.

We considered an analogous problem, involving the propriety of the Commonwealth calling to the stand a witness who it is known will likely invoke the Fifth Amendment, in three recent cases: *Commonwealth v. Davenport*, 453 Pa. 235, 238-40, 308 A.2d 85 (1973); *Commonwealth v. DuVal*, 453 Pa. 205, 211-18, 307 A.2d 229 (1973); *Commonwealth v. Terenda*, 451 Pa. 116, 122-23, 301 A.2d 625 (1973).[2] In these cases, we held

---

[1] The Commonwealth does not suggest that this statement, which apparently was given to the police following Hobbs' arrest, was admissible as a statement of a co-conspirator in furtherance of the conspiracy. *Cf. Commonwealth v. Ellsworth*, 409 Pa. 505, 187 A.2d 640 (1963).

[2] In *Davenport*, three justices concurred in the result and the Chief Justice dissented; in *DuVal*, two justices concurred in a separate opinion and one in the result, with the Chief Justice dissenting; in *Terenda*, four justices concurred in the result. The fact that the opinions which announced the decisions of the Court did not speak for a majority of the Court in these cases does not undercut the rationale for which they are here cited.

that it is reversible error for the prosecution, once informed of a witness' intention to claim a privilege against self-incrimination, to call that witness to the stand before the jury where the witness is likely to be thought by the jury to be associated with the defendant in the incident or transaction out of which the criminal charges arose. While there are obvious factual differences between the cited cases and the present one, these differences are not helpful to the Commonwealth; the underlying rationale of these cases is controlling here. The prosecution may not suggest by indirection what it is barred by the rules of evidence or testimonial privilege from demonstrating by direct testimony.

Some indication of the impact of Hobbs' brief testimony disavowing the truth of his statement may be gleaned from the jury's question to the court, partway through its deliberations, whether Hobbs' statement had been admitted in evidence, and its request to see the statement. Under these circumstances, it cannot be assumed that Hobbs' testimony did Wright no harm. "Unfortunately, an overzealous prosecution had overplayed its hand and, in so doing, has created an error which demands a retrial of the whole case." *Commonwealth v. Ellsworth,* 409 Pa. 505, 513, 187 A.2d 640 (1963).

The judgment of sentence is reversed and the case is remanded for a new trial.

Mr. Chief Justice JONES dissents.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result because, in my view, this case is plainly controlled by *Commonwealth v. DuVal,* 453 Pa. 205, 307 A.2d 229 (1973). There, five Justices of this Court were of the opinion that the defendant was "entitled to a new trial because the trial court, over timely objection, erroneously permitted the prosecutor to call [a witness] who the prosecutor knew would assert the privilege against self-incrimination." Id. at

224, 307 A.2d at 238 (concurring opinion).* This principle applies with equal force to the instant facts and requires that appellant be granted a new trial.

---

* The ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function (Approved Draft, 1971), emphatically condemns this practice.

"It is unprofessional conduct for a prosecutor to call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege." Id. § 5.7(c). Accord, *United States v. King*, 461 F.2d 53 (8th Cir. 1972); *State v. Vega*, 85 N.M. 269, 511 P.2d 755 (Ct. App. 1973). See also *Commonwealth v. DuVal*, 453 Pa. 205, 211-12 n.2, 307 A.2d 229, 231-32 n.2 (1973) (collecting cases).