409 A.2d 63

**COMMONWEALTH of Pennsylvania**

v.

**Marvin MATHIS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1978.

Filed Aug. 24, 1979.

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CER-
CONE, PRICE, VAN der VOORT, SPAETH and HESTER,
JJ.

PRICE, Judge:

Following a jury trial commenced on November 22, 1976,
appellant was convicted of theft[1] and criminal conspiracy;[2]
he was acquitted on a charge of burglary.[3] Post-trial mo-
tions were denied, and appellant was sentenced to terms of
imprisonment of from two and one-half to five years on both
the theft and the conspiracy convictions. The two sentences
were to run consecutively.

In the instant appeal from that judgment of sen-
tence, appellant contends that the court below committed
error: (1) by instructing the jury that it could find appellant
and his co-defendant guilty of conspiracy if they agreed to
commit the theft *after* entry into the residence in question
even though the indictment specified that the overt act of
the conspiracy was the entry into the residence; (2) by
denying appellant's motion for mistrial based upon allegedly
improper comments made by the prosecutor during his sum-
mation to the jury; and (3) by refusing to permit defense
counsel to cross-examine the complainant concerning her
relationship with her boyfriend who allegedly gave the keys
to her apartment to appellant and his co-conspirators. We
find these contentions to be without merit. Two of appel-
lant's co-conspirators, Wilmer Wilson and Larry Howzell,
raised identical issues in their appeals to this court. We
affirmed, per curiam, the decision of the lower court in both
of these cases. *Commonwealth v. Howzell*, 257 Pa.Super.
607, 390 A.2d 292 (1978) (Allocatur Denied 3/22/79); *Com-
monwealth v. Wilson*, 257 Pa.Super. 621, 390 A.2d 300 (1978).

Appellant's final contention is that the court below
committed error by imposing the maximum prison sentence

1. 18 Pa.C.S. § 3921.

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 3502.

solely on the basis of the criminal act without any considera-
tion of appellant's character or any inquiry into possible
mitigating circumstances. We agree with appellant that the
court below improperly sentenced him, and therefore, we
remand to the lower court for resentencing.

The following facts were adduced at trial. On September
6, 1976, at approximately 2:00 a. m., Mr. Robert Swope,
neighbor to complainant Audrey Drayton, noticed that the
kitchen light was on in Ms. Drayton's apartment, and that
two men inside the apartment surreptitiously poked their
heads out of the back door and back window of her apart-
ment. Knowing that Ms. Drayton was on vacation out-of-
town, Mr. Swope's wife alerted police as to the presence of
the two men. Upon their arrival at the apartment, the
police discovered appellant and co-defendants Wilson and
Howzell inside. Co-defendant Wilson was standing in the
hallway of the apartment. He was surrounded by numerous
green trashbags filled with clothing and a large number of
appliances. Appellant was discovered hiding in a bedroom
closet, and co-defendant Howzell was discovered hiding be-
hind a living room couch; another co-defendant, Thomas
White, was arrested outside of the apartment. The apart-
ment had been ransacked, and large amounts of clothing·and
appliances had been stuffed into suitcases as well as the
green plastic bags. Ms. Drayton, lessee of the apartment,
testified that she never met appellant and his co-defendants
previously, and that they did not have her permission to be
there. She also testified that she discovered that numerous
articles were missing from her apartment upon her return
from vacation. Appellant and his co-conspirators main-
tained that Ms. Drayton's boyfriend and sometime room-
mate, Will Goldsmith had told them that he was going to
move, and gave the keys to them so that they could help
move some of his belongings. Mr. Goldsmith was not availa-
ble to testify at trial.

Appellant was sentenced by the Honorable James T.
McDermott on February 28, 1977, to the maximum sentence
(2½–5 years imprisonment) on both the theft charge and the

conspiracy charge. Appellant contends this sentence was improper because the court failed to take into account any factors other than the crime itself. Appellant particularly noted Judge McDermott's refusal to consult any pre-sentence reports. At the sentencing hearing, the following exchange took place:

"THE COURT: . . .

Does the Commonwealth move for sentencing?

MR. CARPENTER [Assistant District Attorney]: Yes, sir.

THE COURT: Very good.

The Court is not interested in a pre-sentence or psychiatric examination of the defendants, in view of the nature of the charges, the type of offenses for which they were actually convicted.

Suppose we call Marvin Mathis to the bar of the Court.

. . .

On Bill 964, charging you with criminal conspiracy, the sentence of the Court is 2½ to 5 years in the State Correctional Institution.

On Bill 965, charging you with theft, the sentence of the Court is 2½ to 5 years in the State Correctional Institution to run consecutive to Bill 964.

It is the intention of the Court to impose a sentence representing 5 to 10 years in the State Correctional Institution.

MR. HANFORD [Counsel for appellant]: Your Honor, with reference to the Court's sentence, may I say two things? I believe some of what I say will probably carry over to the other co-defendants also.

We would do two things. One, I would ask the Court to consider the fact that this is essentially a crime against property—

THE COURT: I have no intention to consider anything other than the nature of the offenses here by the defendants, the circumstances of their arrest, the evidence presented at trial. I think that under the circumstances the sentence of 5 to 10 years in the State Correctional

Institution is an appropriate one to this defendant." (N.T. 2/28/77 18–20).

We agree with appellant's contention that the lower court acted improperly during sentencing, and therefore vacate the judgment of sentence and remand for resentencing.

 Although the sentence imposed by the trial court normally is left undisturbed on appeal because that court is in far better position to weigh the factors involved in such a determination, nevertheless, the court's discretion in sentencing must be exercised within certain procedural limits, including the consideration of sufficient and accurate information, *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976), and the court must place on record its reasons for imposition of the particular sentence chosen. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).[4]

The sentencing procedure employed by the court below in the instant case runs contra to the requirements of our supreme court enunciated in *Riggins* and *Martin*. The only reason the court gave for imposing the specific sentence that it did was the nature of the crime involved. In addition, the court did not consider the character of appellant.

"The sentence must be imposed for the minimum amount of confinement that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. See 18 Pa.C.S. § 1321(b) (Supp.1975). At least two factors are crucial to such determination—the particular circumstances of the offense and the character of the defendant. Pa.R.Crim.P. 1403(a)(2) provides that all pre-sentence reports shall include such information. We hold that regardless of whether a pre-sentence report is ordered, the sentencing court must at least consider these two factors in its sentencing determination. Failure to give such individu-

---

4. The fact that sentence in the instant case was imposed before the supreme court's decision in *Riggins* is of no import. The standards enunciated in the *Riggins* case apply with equal force to pre-*Riggins* cases. *Commonwealth v. Jefferson*, 484 Pa. 115, 398 A.2d 971 (1979).

alized consideration requires that these sentences be vacated." *Commonwealth v. Martin, supra* 466 Pa. at 133, 351 A.2d at 658 (1976).

Since the lower court failed to comply with the sentencing procedures delineated in *Riggins* and *Martin*, we are compelled to vacate the judgment of sentence.

We note, additionally, that the sentencing procedure also fails to comport with Pennsylvania Rule of Criminal Procedure 1403(A)(2) which provides:

"The sentencing judge shall place on the record his reasons for dispensing with the pre-sentence investigation report if the court fails to order a pre-sentence report in any of the following instances:

(a) where incarceration for one year or more is a possible disposition under the applicable sentencing statutes; . . . "

We have held that failure to comply with Pa.R.Crim.P. 1403(A)(2), in itself, is grounds for vacating the judgment of sentence and remanding the case to the court below for resentencing. *Commonwealth v. Warren,* 259 Pa.Super. 268, 393 A.2d 821 (1978).

Accordingly, judgment of sentence is vacated, and the case is remanded to the court below for resentencing.

SPAETH, J., files a concurring and dissenting opinion.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

I agree with the majority that the lower court sentenced appellant improperly. As the majority correctly holds, it was a manifest abuse of discretion for the court to sentence a defendant without considering the character of the defendant, as well as the particular circumstances of the offense, in light of the legislative guidelines for sentencing. *See, e. g., Commonwealth v. Wicks,* 265 Pa.Super. 305, 401 A.2d 1223 (1979). Furthermore, the court was required to impose the minimum sentence consistent with the protection

of the public, the gravity of the offense, and the rehabilitative needs of the defendant, and to state on the record its reasons for the sentence imposed. *See, e. g., Commonwealth v. Knight,* 479 Pa. 209, 387 A.2d 1297 (1978); *Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. Bolyard,* 256 Pa.Super. 57, 389 A.2d 598 (1978); The Sentencing Code, Act of Dec. 30, 1974, P.L. 1052, No. 345, 18 Pa.C.S.A. § 1321(b) (Supp. 1979–80). Because the court failed to follow mandatory sentencing procedures, instead stating summarily that it thought that "under the circumstances the sentence of 5 to 10 years in the State Correctional Institution [was] appropriate . . .." Majority Op. at 65, vacation of appellant's sentence is necessary.

I disagree, however, with the majority's conclusion that the lower court correctly denied appellant's motion for a mistrial because of the district attorney's comments during closing argument.

Appellant was tried together with his three co-defendants, and did not testify. During closing argument the district attorney stated:

Ladies and gentlemen, let me suggest to you that you should not allow the smoke created by defense counsel's questions, innuendos, suggestions, opening speeches that are uncorroborated, unfulfilled, that is what I should refer to as smoke.

And the smoke is the whole business about Will Goldsmith, which is created entirely out of the defense questions, really.

But, not entirely. Because the first time that you heard about Will Goldsmith was from Mr. Moldovsky [counsel for co-defendant Howzell] in his opening. He said that, "My client [Howzell] is going to tell you that Will Goldsmith—"

MR. HOLT [also counsel for co-defendant Howzell]: Objection, your Honor.

MR. FINEMAN [counsel for another co-defendant]: Your Honor, at this time we move for a mistrial.

MR. HOLT: Move for a mistrial.

THE COURT: Motion denied.

MR. CARPENTER [the district attorney]: Ladies and gentlemen, you were here. You heard it. He said, "My client is going to testify that Will Goldsmith is boyfriend—"

MR. FINEMAN: Your Honor, I don't want to interrupt at all. I think that the record should be clear that any reference at all—

MR. HOLT: Same motion.

THE COURT: Overruled.

MR. CARPENTER: That was the first reference that you heard about Will Goldsmith. That came from Mr. Moldovsky, whose professional reputation is at stake, according to the defense.

Mr. Moldovsky told you that his man would tell you that Will Goldsmith gave the keys to Wilmer Wilson, and that they then went to the apartment. That was the defense.

Has the defense produced Will Goldsmith to testify?

MR. SPAULDING [counsel for another co-defendant]: Objection your Honor.

THE COURT: Overruled.

MR. CARPENTER: Has the defense produced the testimony Mr. Moldovsky told you they were going to do?

MR. HOLT: Objection.

THE COURT: Overruled.

N.T. Vol. 5 at 66–68.

It was improper for the district attorney to ask the jury to draw an adverse inference of guilt against appellant because appellant had not called his co-defendant Howzell to testify. The fact that *Howzell's* attorney had claimed in his opening statement that *he* would call Howzell to testify is immaterial; appellant had no power to compel Howzell's testimony,

and it was improper for the district attorney to suggest that he did. *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680 (1974); *Commonwealth v. Reed*, 212 Pa.Super. 11, 240 A.2d 390 (1968).[1]

In the circumstances of this case the trial judge's error in overruling defense counsels' objections[2] to the district attorney's argument was not error harmless beyond a reasonable doubt. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). After overruling the objections, the judge gave no curative instructions. The judge did instruct the jury near the end of his charge that it would be improper to draw an unfavorable inference from the defendants' failure to testify, but this instruction was general only, and without reference to the district attorney's argument that the jury *could* draw such an inference—an argument that the jury must have thought proper, since it had seen and heard the judge permit it over defense counsels' objections.

For these reasons, I should reverse judgment and remand for a new trial.

1. I recognize that the district attorney did not specifically refer to appellant, instead stating his rhetorical question generally: "Has the defense [referring to all four defendants] produced the testimony Mr. Moldovsky told you they were going to do?" The generality of phrasing, however, in no way diminished the force of the district attorney's suggestion that appellant had the power to call Howzell; it amounted to saying that appellant and his co-defendants all had that power. Moreover, in *Commonwealth v. Terenda*, 451 Pa. 116, 301 A.2d 625 (1973) (plurality opinion), the Supreme Court held that a new trial is required when a district attorney calls to the stand a co-defendant, knowing that the co-defendant will invoke his privilege against self-incrimination. *See also Commonwealth v. Wright*, 456 Pa. 511, 321 A.2d 625 (1974); *Commonwealth v. DuVal*, 453 Pa. 205, 307 A.2d 229 (1973). Here, the district attorney did not attempt to call Howzell as a witness, yet when the district attorney commented on Howzell's failure to testify, appellant suffered the same kind of prejudice the defendant in *Terenda* suffered.

2. As shown by the quotation from the transcript, *supra*, immediate objections and motions for new trial were made by counsel for appellant's co-defendants. After these objections were overruled and the district attorney had completed his closing, appellant's counsel moved for a mistrial on the basis of the remarks. N.T. Vol. 5 at 89.