488 A.2d 327

**COMMONWEALTH of Pennsylvania**

v.

**Randolph JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted April 30, 1984.

Filed Feb. 15, 1985.

98

John Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before SPAETH, President Judge, and WIEAND and CIRILLO, JJ.

WIEAND, Judge:

Randolph Johnson was tried by a jury which found him guilty of robbery [1] and criminal conspiracy. [2] On direct appeal, he contends that it was error to deny a defense request to interrogate a co-defendant out of the hearing of the jury and to allow the Commonwealth to place the co-defendant on the witness stand and interrogate him before the jury when it was known that the co-defendant would assert his Fifth Amendment right to remain silent and refuse to answer questions. We agree and reverse.

The holdup which gave rise to criminal charges in this case occurred at or about 10:40 p.m. on August 21, 1981 at the 7-Eleven Store at 69th Avenue and Old York Road in

1. 18 Pa.C.S. § 3701.
2. 18 Pa.C.S. § 903.

Philadelphia. Monica Ritinski, the cashier, testified that a man identified as Darryl Montoute had held a shotgun, which he pointed at her, while a companion, whom she could not identify, removed the drawer from the cash register. As the two men beat a hasty retreat from the store, they encountered Roger Oliver who was about to enter. He was told to get out of the way, and the man carrying the shotgun, whom he identified as Darryl Montoute, menacingly pointed the gun in his direction. Oliver saw the two men get into a red Ford; before they drove away, he was able to obtain and record the license number of the vehicle. With this information the police were able to determine that Ronald Stephens was the registered owner of the car. When they went to Stephens' residence, they found Stephens, Montoute, Johnson, and a person known as "Box", who was intoxicated. A sawed-off shotgun was found in the red Ford, and the drawer of the cash register was found in a trash can at the rear of the residence. Oliver, who unequivocally identified Montoute as the person who had held the gun, was unable to identify the other man who had fled from the scene of the robbery. Stephens testified that on the night of the robbery he had leased his car to Montoute and Johnson.

Montoute filed a pre-trial motion to sever the charges against him from those pending against Johnson. During a hearing thereon, he testified that Johnson had been the other robber but that he, Montoute, would not testify as a Commonwealth witness if Johnson were present. Johnson had threatened him, he said, and he feared for his life. After the motion to sever had been denied, Montoute entered a plea of guilty to the charges which had been brought against him.

At trial on the charges against Johnson, the Commonwealth announced its intention to call Montoute as a witness. Objections were made by counsel for Montoute and also by the attorney for Johnson. The trial court, however,

approved a Commonwealth grant of immunity to Montoute [3] and said that he would be allowed to testify. Defense counsel objected and requested the court to interrogate Montoute out of the hearing of the jury because it was believed that Montoute would refuse to testify. To claim the privilege against self-incrimination in the presence of the jury, it was argued, would be prejudicial to Johnson, especially so because Montoute would be appearing in prison garb. The trial court overruled the objection and required Montoute to testify before the jury.[4] The following is what occurred:

BY MR. CARPENTER:

Q. Mr. Montoute, good afternoon.

A. Good afternoon.

Q. Mr. Montoute, on August 21, 1981, were you arrested?

A. I don't wish to answer any questions.

BY THE COURT:

Q. You refuse to answer questions?

A. I don't refuse. I just don't wish to answer any questions.

Q. Are you claiming a privilege under the 5th and 14th Amendments?

A. Yes, I am.

THE COURT: I have already signed an Order granting you immunity so the testimony may not be used against you. I hereby order you and direct you to answer the questions.

BY MR. CARPENTER:

3. The grant of immunity extended only to the non-use of Montoute's testimony in the criminal proceedings pending against him, where pleas of guilty had already been entered.

4. The trial court apparently had misunderstood an earlier defense objection and believed that counsel had objected to Montoute's giving testimony in camera. The nature of the objection was thereupon restated, and the record is clear that defense counsel requested an in camera determination of what Montoute would say and objected to the witness being placed on the stand in the presence of the jury before he had been interrogated in camera.

Q. Mr. Montoute, on August 21, 1981, were you arrested?

A. I don't wish to answer any questions.

THE COURT: I am ordering and directing you to answer questions.

THE WITNESS: I don't wish to answer any questions.

BY MR. CARPENTER:

Q. Mr. Montoute, on August 21, 1981, were you arrested?

A. I don't wish to answer any questions.

Q. Do you understand there has been an Order signed by the Judge, signed also by the District Attorney, Edward Rendell, saying anything that you say here in Court today cannot be used against you?

A. I understand perfectly. I don't wish to answer any questions.

Q. Did you plead guilty to robbing a Seven Eleven?

MR. GLOVIN: Objection.

THE COURT: Overruled.

THE WITNESS: I don't wish to answer any questions.

BY MR. CARPENTER:

Q. You may not wish to, but you must. Did you plead guilty to robbing a Seven Eleven?

A. I don't wish to answer any questions.

BY THE COURT:

Q. Tell me why you refuse to answer?

A. I don't wish to answer any questions.

MR. CARPENTER: Will you instruct him to answer?

THE COURT: I have already instructed him.

BY THE COURT:

Q. Do you realize by refusing to comply with my Order, you are now in contempt of Court? Do you understand that?

A. Yes, I do.

Q.  Do I take it you are not going to answer any questions put to you by Mr. Carpenter at all?

A.  Yes.

Record, pp. 331–333.

█ The applicable law is clear. In *Commonwealth v. DuVal*, 453 Pa. 205, 307 A.2d 229 (1973), the Supreme Court held "that the prosecution, once informed that a witness intends to claim a privilege against self-incrimination, commits error in calling that witness to the stand before the jury where the witness is a person (co-defendant, accomplice, associate, etc.) likely to be thought by the jury to be associated with the defendant in the incident or transaction out of which the criminal charges arose." *Id.*, 453 Pa. at 217, 307 A.2d at 234. See also: *Commonwealth v. Virtu*, 495 Pa. 59, 432 A.2d 198 (1981). The necessity for proceeding out of the hearing of the jury is not obviated because a co-defendant has entered a plea of guilty. See: *Commonwealth v. Davenport*, 453 Pa. 235, 239–240, 308 A.2d 85, 87 (1973). Similarly, it is not an adequate answer that the court or the prosecution believes the assertion of the privilege is invalid. "The witness' known intent to invoke the privilege coupled with the prosecutor's opinion that the testimony sought can be nevertheless compelled presents the risk that, [as occurred in this case], the witness might prove not only reluctant to testify but contumacious as well. If the fact of invocation of the privilege is, as [the Supreme Court has held], irrelevant to the issues and prejudicial to the defendant, it is that much more prejudicial to permit the jury to observe that the recalcitrant witness (a person likely to be associated in the jurors' minds with the defendant) elects to remain silent notwithstanding the order of the court that he testify." *Commonwealth v. DuVal, supra* 453 Pa. at 217, 307 A.2d at 234.

In the instant case, defense counsel properly requested the trial court to question Montoute out of the hearing of the jury. In this manner, the entire issue could have been settled without impairing the jury's ability to reach a just and fair determination based solely on relevant evidence. Instead, after the co-defendant had asserted the privilege

against self-incrimination and had repeatedly refused to answer questions, the jury heard the prosecuting attorney ask him if he had entered a plea of guilty. The jury was also told that the witness was in contempt of court. This was error. The information thus imparted to the jury was wholly irrelevant to the issue of Johnson's guilt or innocence.

█ The Commonwealth does not contend otherwise. It argues, instead, that appellant caused Montoute's refusal to testify by threatening him and that, in any event, the error was harmless because evidence of guilt was overwhelming. We reject these arguments. The trial record does not disclose the reason why Montoute elected to assert the privilege against self-incrimination. Although Montoute had testified during a pre-trial hearing regarding threats made by appellant, this testimony was not repeated at trial, and there is no basis for concluding that the prior threats, if made, were the cause of the co-defendant's refusal to testify at trial. On the contrary, the only inference to be drawn from statements made by Montoute's counsel is that Montoute's unwillingness to testify was prompted at least in part by an uncertainty regarding the efficacy of the Commonwealth's grant of immunity to one who had already entered a plea of guilty. This also explains Montoute's announced decision to seek a withdrawal of his plea of guilty if compelled to testify in exchange for a grant of immunity. In any event, the reasons for Montoute's unwillingness to testify and the nature and effect of the immunity being tendered by the Commonwealth in exchange for Montoute's testimony were matters that could better have been resolved out of the hearing of the jury before Montoute was placed on the stand in the jury's presence.

Without Montoute's testimony, the Commonwealth's evidence implicating appellant in the robbery was entirely circumstantial. The eyewitnesses were not able to identify appellant, and their description of the second robber was meager. In view of the fact that the jury's guilty verdict was based on inferences to be drawn from the Commonwealth's evidence, we are unable to hold, as the Common-

wealth would have us do, that the trial court's error was harmless. Rather, it appears that appellant may well have been prejudiced unfairly by an improper inference drawn from the irrelevant refusal of a co-defendant to testify on Fifth Amendment grounds.

The error was not corrected by cautionary instructions. During the delivery of jury instructions, the trial court told the jury unequivocally that Montoute had entered a plea of guilty to the robbery, explained the immunity which had been granted to him, and told the jury that the witness was in contempt of court by nevertheless refusing to testify. The court concluded:

> I do not mean to imply you should read into his conduct of not testifying as being an admission of guilt on the part of the defendant. Because he did not testify you are unable to evaluate his testimony. My purpose in referring to it is so you completely understand what was meant by the grant of immunity....

(N.T. 542–543).[5]

"Whether or not prejudicial error can be cured by appropriate instructions can be answered only through an objective evaluation of the capability of the average juror to follow the instruction and thus refrain from ... use of evidence improperly admitted." *Commonwealth v. DuVal, supra,* 453 Pa. at 218, 307 A.2d at 235. In the instant case, the unfair prejudice was such that it was unlikely that it could be corrected by appropriate instructions. We need not make that determination, however, for in any event the instructions by the trial court in this case were far from adequate. The jurors knew, because the court told them, that Montoute had entered a plea of guilty to the same offense for which appellant was being tried. The jury also learned from the evidence that the car had been leased to Montoute and appellant and that appellant had been in Montoute's presence when the latter had been apprehended after the robbery. The potential for transferring Mont-

---

5. Defense counsel objected to these instructions as compounding the prejudice previously suffered by the co-defendant's refusal to testify in the presence of the jury.

oute's admission of guilt adversely to appellant, therefore, was great. Moreover, the trial court's instructions merely told the jury what the court was not implying. It did not expressly tell the jury that the jury should not infer appellant's guilt from Montoute's admitted guilt and refusal to testify. See: *Commonwealth v. Terenda*, 451 Pa. 116, 301 A.2d 625 (1973). See also: *Commonwealth v. DuVal*, *supra*. Instead, the court told the jury that Montoute was not only guilty of robbery but reprehensibly contemptuous of the court for refusing to implicate appellant. An error of this magnitude requires that a new trial be granted.[6]

Reversed and remanded for a new trial. Jurisdiction is not retained.

6. Appellant has also argued that the attorney for the Commonwealth was guilty of prosecutorial misconduct in his closing argument to the jury and during his questioning of the witness, Joan Clark. Our examination of the record fails to disclose such misconduct. The mere fact that the prosecution commented upon the strategy of defense counsel and suggested that he had put roadblocks in the way of the Commonwealth was not per se improper. The effect of these comments was not to prejudice the appellant by forming in the jurors' minds a fixed bias or hostility so that they were unable to weigh the evidence objectively and return a true verdict. With respect to the witness, Joan Clark, she was held to be a hostile witness, and the prosecution was permitted to cross-examine her. We perceive no error, and even appellant has been unable to identify error in her cross-examination which is sufficiently egregious to require a new trial.