J-A04040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KENNETH MARTIN :
:
Appellant : No. 1962 MDA 2016

Appeal from the Judgment of Sentence July 7, 2016
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001662-2012,
CP-41-CR-0001990-2013

BEFORE: STABILE, J., NICHOLS, J., and RANSOM*, J.

MEMORANDUM BY RANSOM, J.: **FILED JUNE 26, 2018**

Appellant, Kenneth Martin, appeals from the judgment of sentence of seven and one-half to twenty years of incarceration imposed July 7, 2016, following a jury trial resulting in his convictions for burglary, two counts of robbery, two counts of conspiracy, aggravated assault, criminal trespass, terroristic threats, theft, receipt of stolen property, simple assault, and recklessly endangering another person.[1] We affirm.

Appellant and Noor Ford were acquaintances. Notes of Testimony (N.T.), 9/18/12, at 44-45. Mr. Ford had been selling heroin for Appellant and owed him approximately $1,000.00. *Id.* On June 19, 2012, Mr. Ford was staying in Room 214 at the Econo Lodge in Williamsport, Pennsylvania. *Id.*

---

[1] 18 Pa.C.S. §§ 3502(a), 3701(a)(1)(ii) and (iv), 903, 2702(a)(4), 3503(a)(1)(i), 2706(a)(1), 3921(a), 3925(a), 2701(a)(1), and 2705, respectively.

* Retired Senior Judge assigned to the Superior Court.

at 15.  Around 11:00 a.m., Appellant and two other men entered Mr. Ford's room without permission.  *Id.* at 74-75, 98.  Appellant aimed a semi-automatic pistol at Mr. Ford and threatened to shoot him unless Mr. Ford produced the money owed.  *Id.* at 45, 74-75.

When Mr. Ford replied that he did not have any money, Appellant pistol-whipped Mr. Ford and knocked him over.  *Id.*  Appellant's companions began to punch and kick Mr. Ford, eventually knocking him unconscious.  *Id.* at 34, 52.  The three men ransacked Mr. Ford's room, stealing money, heroin, an Xbox video game console, backpack, duffelbag, and Mr. Ford's iPhone.  *Id.* at 44, 69, 81-82.  Video surveillance from the Econo Lodge showed Appellant and two other men leaving with a duffel bag and a backpack.  *Id.* at 43, 81-82.

One of the assailants took photographs of Appellant punching Mr. Ford in the head during the assault and of Mr. Ford's swollen and bloody face after the incident.  *Id.* at 46, 48, 56.  The images were then posted to social media accounts with suggestions that Mr. Ford had been beaten due to a drug debt.[2]  *Id.* at 51, 56-58.

_____

[2] The photographs were posted on the following Instagram accounts: Snoop_Rock, DumbLoud_NR, which was Mr. Ford's account, and Tee_Pain215. N.T., 1/28/16, at 207-08. Instagram is an online photo-sharing and social networking service. *In re A.E.*, No. 1506 EDA 2013, (Pa. Super. Ct. filed June 17, 2014).  "Instagram, which is owned by Facebook, Inc., describes itself as 'a fun and quirky way to share your life with friends through a series of pictures.'  The platform allows users to 'post' images online to share with their 'followers' or the public.  Instagram also permits users to 'like' or comment on

Mr. Ford called a friend, who assisted him in reaching a hospital. *Id.* at 14, 16. Hospital personnel treated his injuries and contacted the police. *Id.* 27-28. Trooper Tyson Havens had known Mr. Ford for a few years prior to this June 2012 incident *Id.* at 28. Prior to going to the hospital, Trooper Havens went to the Econo Lodge to view the room where Mr. Ford was assaulted and saw the blood spatter and layout of the room. *Id.* at 40, 49. Trooper Havens also viewed the surveillance footage from the Econo Lodge, which enabled him to identify two of the assailants as Terrence Forsythe, also known as "Tee Pain," and Michael Wills. *Id.* at 41, 44.

Next, Trooper Havens visited Mr. Ford in the hospital. Mr. Ford told Trooper Havens that he was "struck with a pistol, punched and kicked by an individual named Snoop, by an individual named Dark, and by a third individual whose name he did not know." *Id.* at 34-35. Mr. Ford also gave Trooper Havens the number for his stolen iPhone. *Id.* at 46. This number was used to post photographs of the assault on Instagram. *Id.*; *see also*, *supra*, at n.2.

During a second interview with police, Mr. Ford described the assailant he knew as "Snoop," to be a man with the number "13" tattooed between his eyes. *Id.* at 39. Based on the description of the tattoo, Trooper Havens was able to identify "Snoop" as Appellant. *Id.* at 51, 62-63. During a third

---

one another's image posts." *Graham v. Prince*, 265 F. Supp. 3d 366, 372 n.2 (S.D.N.Y. 2017) (citation to record omitted).

interview, Mr. Ford signed a statement typed by Trooper Havens after making several redactions out of fear for his safety because of threats from Appellant. *Id.* at 83-84, 91.

During the course of the investigation, Helena Yancey, the mother of one of Mr. Ford's children, informed Mr. Ford that photographs of the assault had been posted on Instagram. *Id.* at 46. Mr. Ford informed Trooper Havens, who requested Ms. Yancey forward screenshots of the photographs to him. *Id.* at 51; N.T., 1/28/16, at 176, 179-80. Upon further investigation, Trooper Havens determined that numerous Instagram accounts had posted or commented on the photographs. N.T., 9/18/12, at 50-81. Using this information, Trooper Havens secured a court order to obtain from Instagram the images and comments posted, as well as all relevant account information. *Id.* at 48, 51; N.T., 1/28/16, at 205. Instagram complied with the court order, providing a zip drive containing the photographs and account information along with a certificate of authenticity. N.T., 9/18/12, at 18.[3]

In September 2012, Mr. Ford failed to appear at the scheduled preliminary hearing. As a result, the Commonwealth asserted that Mr. Ford was unavailable as a witness and sought to introduce his statements made to

---

[3] Based on the sources of the posted images and comments, the following accounts were included on the court order: Snoop_Rock, DumbLoud_NR, Tee_Pain215, Bok_WP_59, and MoneyChaser. N.T., 9/18/12, at 50-81; N.T., 1/28/16, at 207-08.

the police. N.T., 9/13/12, at 16. The Commonwealth further asserted that Appellant waived his right to confront the witness because he was responsible Mr. Ford's unavailability.[4] *Id.* The trial court did not rule from the bench but indicated that an order would issue later that day. *Id.* at 54. Thus, the hearing was continued. No such order appears in the record. Nevertheless, five days later, the hearing continued, and the court referenced its prior ruling on Mr. Ford's unavailability and permitted the Commonwealth to introduce statements made by Mr. Ford to the police. N.T., 9/18/12, at 3, 27-47.

At the conclusion of the hearing, the trial court held for court all of the charges except for burglary. *Id.* at 123. In June 2013, the Commonwealth refiled the burglary charges at docket No., CP-41-CR-0001990-2013. Prior to a second preliminary hearing on the burglary charge, Mr. Ford was located and held on a material witness warrant.[5] N.T., 3/10/14, at 61. The burglary

---

[4] There was evidence that Mr. Ford had fled from the area because of threats received from Appellant. Trooper Havens testified that Mr. Ford told him that if Appellant or his people found out about his cooperation, he and his family would be put at risk and that he had received numerous calls from Appellant and others threatening him. N.T., 9/13/12, at 20. Trooper Havens also testified that, on June 26, 2012, Mr. Ford had received sixteen calls from Appellant, with the longest call lasting 371 seconds. *Id.* at 21, 25. On this day, Mr. Ford sent Trooper Havens several text messages claiming that he had been high on syrup, i.e., Vicodin, and Percocet at the time he initially recorded his statements. *Id.* at 21-22.

[5] The record indicates that there was a separate, second preliminary hearing on the burglary charge, at which Mr. Ford was present but refused to cooperate. *See* N.T., 3/10/14, at 12. However, this transcript does not appear in the record.

charge was held for court, and the trial court granted the Commonwealth's motion to consolidate the charges against Appellant. ***See*** Trial Court Order, 1/16/14.

At a hearing held in March 2014 to address an omnibus motion filed by Appellant, Mr. Ford testified that he could not remember the assault or any statements made to Trooper Havens. N.T., 3/10/14, at 44-50. The trial court admitted the statements given to Trooper Havens over Appellant's standing objection.[6] ***Id.*** at 66-68, 72-90. At the conclusion of the hearing, the court stated that it would review the evidence and issue an opinion. ***Id.*** at 99.

In its opinion, the trial court stated that:

> The Commonwealth first argues that this court is bound … to the coordinate jurisdiction rule. The coordinate jurisdiction rule provides that judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. Departure from this principle, however, is allowed "in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or the evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed."

> Here, there was a change in the facts or evidence giving rise to the dispute in the matter. When Judge Butts made her forfeiture by wrongdoing ruling, [Mr.] Ford was not available for the preliminary hearing because he could not be located. The Commonwealth presented audio and written statements from Ford and testimony from Trooper Havens that Ford left town and refused to disclose his whereabouts because he was concerned for his safety and the safety of his family. Ford has since been located and detained on a material witness warrant. The Court finds that

_____

[6] The trial court deferred its decision on Appellant's objection on the basis of hearsay. ***See*** N.T., 3/10/14, at 74.

- 6 -

this is a sufficient change in the facts to justify a reexamination of the forfeiture by wrongdoing ruling.

Despite this change in the facts, however, the court reaches the same conclusion. Although Ford was physically present to testify, he allegedly could not remember any of the conversations or statements he made to Trooper Havens. …

… It was apparent to the court that Ford was feigning a lack of memory to avoid admitting anything in [Appellant's] presence. In fact, in several of the previous written and recorded statements Ford specifically asked Trooper Havens if the statements would be disclosed to [Appellant]. Notably, Ford never denied making the statements that Trooper Havens had attributed to him.

Despite Ford's claim of lack of memory, he admitted that his signature was on the letter admitted as Commonwealth's Exhibit 4. This letter states in relevant part: "You expect me to testify on your behalf then get shipped to a Philly jail where Im [*sic*] told more then [*sic*] once someone will get to me? This is where doing the right thing can depend on how you view things..."

This letter was also consistent with and similar to recorded statements Ford made to Trooper Havens and Williamsport Bureau of Police Agent Stephen Sorage, as well as another letter that was sent to Judge Butts, which the Commonwealth [submitted] as exhibits through a motion to reopen the record…

As a whole, the evidence presented by the Commonwealth established forfeiture by wrongdoing to a preponderance of the evidence. In light of this ruling, [Mr.] Ford's statements are not considered hearsay and are admissible pursuant to Pa.R.E. 804(b)(6).

***See*** Trial Court Opinion and Order, 9/24/14, at 5-7 (internal citations omitted).  Thus, the court found that there had been forfeiture by wrongdoing and the statements of Mr. Ford were admissible.  ***Id.*** at 7.  The court denied Appellant's motion.  ***Id.***

In June 2015, trial commenced before the Honorable Dudley N. Anderson.  N.T., 6/9/15, at 1.  However, there were several disruptive

- 7 -

incidents involving supporters of Appellant that made jurors sufficiently uncomfortable that a mistrial was declared. *See* N.T., 6/11/15, at 73-85, 96-133. A new trial was scheduled before the Honorable Michael J. Williamson, but on the day before it was to begin, this case was reassigned from Judge Williamson to the Honorable Marc F. Lovecchio. N.T., 1/28/16 at 5-6. As a result of the sudden reassignment, prior to trial, Appellant presented an oral motion to dismiss, alleging improper *ex parte* communication between the prosecutor's office and President Judge Nancy L. Butts. *Id.* at 20. According to Appellant, he was prejudiced by the removal of Judge Williamson. *Id.* at 20-21.[7]

On the day of trial, the court conducted a hearing on the motion and permitted Appellant to call District Attorney Eric Linhardt to testify. *Id.* at 12. He testified that he was:

> concerned about his -- at best I would describe it as unprofessional conduct during those three trials [earlier in the week] and what I believed was possible judicial misconduct, that I felt I had a responsibility to let the president judge know about that … I didn't ask that he be reassigned to other criminal cases. I just asked that he not preside over any more cases in the county because I didn't think it was appropriate that he was presiding over trials.

*Id.* at 14, 17. Following the hearing, the trial court denied the motion, concluding that the Appellant's assertions of prejudice were merely speculative. *Id.* at 27.

---

[7] Appellant suggested without support that Judge Williamson may have ruled favorably on his pretrial motions. *Id.*

- 8 -

The Commonwealth then proceeded on its motion to have Mr. Ford again declared unavailable as a result of Appellant's wrongdoing. The parties agreed that Mr. Ford could testify in the presence of the jury. *See* N.T., 1/28/16, at 37-38, 130. Mr. Ford stated he could not remember the assault. *Id.* at 97-99. Thus, Judge Lovecchio again found that Mr. Ford was unavailable. *Id.* at 97-99, 128. The court found further that Appellant had forfeited his right to cross-examine Mr. Ford because of his own wrongdoing. *Id.* at 128-29. The trial court then permitted the Commonwealth to introduce Mr. Ford's prior oral and written statements. *Id.* at 112-16.

Following the trial, the jury convicted Appellant of the aforementioned charges. On July 7, 2016, Appellant was sentenced to four and one-half to ten years of incarceration for burglary, followed by a consecutive sentence of three to ten years for one count of robbery, for an aggregate sentence of seven and one-half to twenty years of incarceration.[8] Appellant timely filed a

_____

[8] After a lengthy sentencing hearing, the trial court imposed sentence. While the certified record includes a detailed sentencing order, which may well have been dictated from the bench, we note with disapproval that the notes of testimony do not reflect that the presiding judge stated the judgement imposed on the record. Rather, the transcript merely indicates in a parenthetical, "WHEREUPON Court entered order." N.T., 7/7/16, at 46. Even where, as here, no sentencing complaint has arisen, this omission may have contributed to unnecessary confusion. *See, e.g.*, Sentencing Order, 7/7/16, at 1-2 (unpaginated) (imposing three to ten years of incarceration for burglary, to be served consecutive to a four and one-half to ten year sentence for robbery, for an aggregate sentence of seven and one-half to twenty years of incarceration);Trial Court Opinion (TCO), 5/24/17, at 3 (suggesting that the aggregate sentence imposed was fifteen to thirty years of incarceration); Appellant's Brief, 8/23/17, at 9 (seemingly citing to first page of the

post-sentence motion, a supplemental post-sentence motion, and additional motions for bail and modifications of bail.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion. On appeal, Appellant raises the following issues:

1. Whether the trial court erred in permitting a witness to testify before a jury and subsequently rule the witness was unavailable?

2. Whether the trial court erred substantively in determining that [Appellant] had forfeited his right to confrontation by wrongdoing?

3. Whether the trial court erred in denying [Appellant]'s motion to dismiss based upon prosecutorial misconduct when the district attorney contacted the president judge to have a judge removed from hearing a case?

4. Whether the trial court erred in permitting lay testimony concerning [I]nstagram and its authenticity?

---

sentencing hearing transcript, which is merely a cover sheet, and suggesting that the aggregate sentence imposed was seven and one-half to fifteen years of incarceration). Further, the sentencing order itself is not without obvious error. The order suggests that Appellant's conviction at count 5, a robbery graded as a second-degree felony, merges for sentencing purposes with his conviction at count 2, a second robbery offense graded as a first-degree felony. Sentencing Order. 7/7/17, at 2 (unpaginated) (similarly suggesting that Appellant's separate convictions for two counts of conspiracy merge). While the court in its discretion may impose a concurrent sentence for distinct crimes or, perhaps, no further penalty, Appellant's multiple counts of robbery do not merge in this case. As the facts adduced at trial demonstrate, during the course of committing a theft, Appellant (1) threatened Mr. Ford with immediate, serious bodily injury, 18 Pa.C.S § 3701 (a)(1)(ii), when he threatened to shoot Mr. Ford with a handgun and (2) inflicted bodily injury upon Mr. Ford, 18 Pa.C.S. § 3701 (a)(1)(iv), when he manually beat him about the head causing injuries requiring hospitalization).

***See*** Appellant's Brief at 3 (capitalization omitted).

In Appellant's first two issues, he challenges evidentiary decisions of the trial court; as such, our review is limited. The standard of review for evidentiary rulings is an abuse of discretion. ***Commonwealth v. Hicks***, 151 A.3d 216, 224 (Pa. Super. 2016), *appeal denied*, 168 A.3d 1287 (Pa. 2017). In particular, it is well settled that:

> [t]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Id.*** (internal citations and quotations omitted).

First, Appellant asserts that the trial court erred procedurally when it determined that Appellant had forfeited his right to confront and cross-examine Mr. Ford. ***See*** Appellant's Brief at 11, 14. Appellant notes that Mr. Ford was called to the stand in the presence of the jury. ***See*** Appellant's Brief at 13. According to Appellant, this was inappropriate, as there should be a separate hearing to determine whether forfeiture by wrongdoing applies. ***Id.*** at 12 (citing in support ***U.S. v. Ledbetter***, 141 F.Supp.3d 786 (S.D. Ohio 2015), and ***Commonwealth v. Terenda***, 301 A.2d 625 (Pa. 1973)). Despite this assertion, Appellant concedes that there is no clearly defined procedure in Pennsylvania. ***Id.*** at 11.

Appellant has waived this claim, as the record demonstrates that Appellant agreed that Mr. Ford should testify before the jury. N.T., 1/28/16, 37-38, 130; *see also Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008) (holding that an issue is waived where an appellant fails to raise a timely objection); *see also* Pa.R.A.P. Rule 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, we conclude that Appellant is not entitled to relief. *Baumhammers*, 960 A.2d at 73.

Absent waiver, we note that Appellant's argument is without merit. The *Ledbetter* court, referenced by Appellant, determined that a pretrial hearing was most appropriate to determine whether a defendant has forfeited his right of confrontation.[9] However, the court also stressed flexibility, observing that "[b]enefits and drawbacks abound for any procedural approach." *Ledbetter*, 141 F.Supp.3d at 793. The court was rightly concerned that a forfeiture-by-wrongdoing determination be made *before* permitting the jury to hear an unavailable witness' statements. *Id.* (noting, for example, that this (1) best preserves the presumption of innocence; (2) avoids the possibility of a mistrial; or (3) improperly influencing the jury's ultimate verdict). We agree, but in this case, the jury heard no statements given by Mr. Ford to

---

[9] This Court is not bound by the decisions of federal courts, but it may rely on them for persuasive authority. *See Commonwealth v. Herbert*, 85 A.3d 558, 565 n.8 (Pa. Super. 2014). The forfeiture-by-wrongdoing exception defined in Pa.R.E. 804(b)(6) is identical to F.R.E. 804(b)(6).

investigators until *after* the court had reaffirmed its previous forfeiture-by-wrongdoing decision. Moreover, the court reaffirmed its decision outside the presence of the jury. **See** N.T., 1/28/16, at 128-129. To be clear, Mr. Ford was called to the stand merely to confirm that he had no memory of the alleged assault. **Id.** at 36-38. This testimony was relevant to his availability as a witness. **See** Pa.R.E. 804(a)(3). He provided no testimony relevant to the separate, forfeiture-by-wrongdoing determination. **See** Pa.R.E. 804(b)(6). Thus, the concerns voiced by the **Ledbetter** court are not implicated here. Further, Appellant's reliance on **Terenda** is misplaced. In that case, our Supreme Court determined that the trial court had erred in permitting the Commonwealth to call co-indictees to the stand, knowing they would invoke their Fifth Amendment rights. **Terenda**, 301 A.2d at 629. According to the Supreme Court, (1) the jury knew of the crucial relationship between the defendant and these co-indictees; (2) their invocation permitted the jury to draw an inference adverse to the defendant; and (3) defendant was deprived of his right to challenge this inference. **Id.** Here, again, the court made its forfeiture-by-wrongdoing determination prior to admitting Mr. Ford's statements and outside the presence of the jury. Therefore, no improper inference could be drawn.

Second, Appellant asserts that the trial court erred "substantively in determining that [Appellant] had forfeited his right to confrontation by wrongdoing[.]" **See** Appellant's Brief at 3 (unnecessary capitalization

- 13 -

omitted).[10] According to Appellant, the Commonwealth failed to introduce testimony from Mr. Ford establishing that his unavailability was caused by Appellant. *Id.* at 16. Rather, according to Appellant, the only relevant testimony from Mr. Ford was introduced at the omnibus pretrial motion hearing, at which Mr. Ford testified that he (1) did not remember telling the detectives that anyone had threatened him; (2) did not trust the prosecution; and (3) on cross-examination, that no one had ever threatened him. *Id.* Appellant continues, "without additional proof of wrongdoing," Mr. Ford's testimony was merely unhelpful to the Commonwealth. *Id.* Thus, Appellant concludes, without citation to authority, Mr. Ford's limited testimony was insufficient to establish forfeiture by wrongdoing. *Id.* at 16-17.

Initially, we observe that Appellant again risks waiver, though on different grounds than on his first issue. Here, Appellant has failed to cite to any authority in support of his assertion that testimony from the unavailable witness is necessary to establish forfeiture by wrongdoing. *Id.* at 15-17*;* **see**

---

[10] In the Argument section of his brief, Appellant suggests the court "erred substantively in determining that [Mr.] Ford was *unavailable*." *Id.* at 15 (emphasis added). This is an issue distinct from that preserved by Appellant. A witness' availability is addressed by criteria defined in Pa.R.E. 804(a); whereas exceptions to the rule against hearsay that are dependent upon the unavailability of the witness are defined in Pa.R.E. 804(b). The confusion caused by Appellant's presentation of his argument is only increased by his apparent concession that, in fact, the Commonwealth established Mr. Ford's unavailability. *Id.* at 15-16 (citing Pa.R.E. 804(a)(3) and stating that Mr. Ford testified on several occasions that he could not recall the incident). We admonish Appellant that his arguments must be properly preserved and developed and that he must conform to our Rules of Appellate Procedure.

**Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa. 2014) ("Where an appellate brief fails to provide any discussion of any claim with citation to relevant authority … that claim is waived.  It is not the obligation of an appellate court to formulate appellate's arguments for him.") (formatting modified; citation omitted); **see also** Pa.R.A.P. 2119(a).

Moreover, Appellant's bald assertion is devoid of merit.  **See, e.g., Commonwealth v. King**, 959 A.2d 405, 411, 414-16 (Pa. Super. 2008) (permitting an officer to read into the record the deceased victim's statements to establish forfeiture by wrongdoing); **Ledbetter**, 141 F.Supp.3d at 788-90, (permitting hearsay testimony of an officer, the victim's attorney, and her friend to establish forfeiture by wrongdoing).

Nevertheless, we note the following.  Essentially, Appellant challenges the discretion exercised by the trial court in admitting statements previously made by Mr. Ford to investigators.  These statements constituted hearsay, as they were offered to prove the truth of the matter asserted.  Pa.R.E. 801(c).  Generally, hearsay testimony is inadmissible, unless it falls within an enumerated exception.  Pa.R.E. 802.  One exception allows for a witness' out-of-court statement to be admitted, if the defendant's wrongdoing caused the witness to be unavailable.  A defendant forfeits his right to confrontation where his own wrongdoing procured the unavailability of a witness.  **King**, 959 A.2d at 415-16 (Pa. Super. 2008) (citing **Giles v. California**, 128 S.Ct. 2678, 2682-83 (2008), which "recogniz[ed] the limited applicability of the forfeiture by wrongdoing doctrine, [and] … reaffirmed its commitment to the long-held

principle that a defendant forfeits his confrontation rights when he intentionally procures the unavailability of a witness … [which] represents a codification of the common-law forfeiture rule…"); ***see also U.S. v. White***, 116 F.3d 903, 911 (D.C. Cir. 1997) (holding that "[t]he defendant who has removed an adverse witness is in a weak position to complain about losing the chance to cross-examine him.").

Here, the record supports the trial court's finding of forfeiture by wrongdoing. As noted previously, Mr. Ford was called to testify and denied any memory of the assault. Thus, the court reaffirmed its prior decision to find him unavailable. N.T., 1/28/16, at 97-99. Thereafter, following an in camera argument, the court indicated that its previous finding of forfeiture by wrongdoing would stand. ***Id.*** at 99-129. Evidence of wrongdoing was adduced pretrial and consisted of the following: (1) three recorded conversations with Mr. Ford to Trooper Havens describing his assault, Appellant, and the reason for his assault; (2) phone records of calls from Appellant to Mr. Ford; (3) evidence that on the day Mr. Ford fled the area, he received a long call from Appellant and then sent a text message to Trooper Havens retracting his previous statements; (4) multiple letters written and signed by Mr. Ford[11]; (5) photographs from Instagram, Mr. Ford's hotel room,

---

[11] One of the letters written by Mr. Ford stated in relevant part: "You expect me to testify on your behalf then get shipped to a Philly jail where Im [*sic*] told more then [*sic*] once someone will get to me? This is where doing the right thing can depend on how you view things …" ***See*** TCO,

and the hospital where Mr. Ford was treated; and (6) recorded prison conversations of Appellant, in which he admitted to having a friend take pictures of Mr. Ford and commenting on Trooper Havens' characterization of the photographs in his Affidavit of Probable Cause. *See* N.T., 1/28/16, at 97-129.

Accordingly, Appellant is not entitled to relief, as the trial court did not abuse its discretion in finding forfeiture by wrongdoing and subsequently ruling that Appellant had lost his right to cross-examine Mr. Ford. *King*, 959 A.2d at 415-16; *Giles*, 128 S.Ct. at 2682-83; *White*, 116 F.3d at 911.

In Appellant's third issue, he challenges the denial of his motion to dismiss. Our standard of review is an abuse of discretion. *Commonwealth v. Robinson*, 122 A.3d 367, 372-73 (Pa. Super. 2015) (finding abuse "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will").

Appellant asserts that an *ex parte* communication between the Commonwealth and President Judge Butts was an impermissible attempt at judge shopping. *See* Appellant's Brief at 17. On the day before his trial, Appellant's case was reassigned from Judge Williamson to Judge Lovecchio. *See id.* Appellant avers that this change was a result of the conversation

---

9/24/14, at 6-7; *see also* 3/10/14, at 46-48 (where Appellant read the letter into the record in its entirety).

between District Attorney Eric Linhardt and President Judge Butts, where the District Attorney expressed his concerns regarding Judge Williamson's decision making in previous cases that week, only mentioning Appellant's case as one of the upcoming trials. *Id.* at 17-19. During the conversation, District Attorney Linhardt did not ask for a specific judge to replace Judge Williamson, but only asked that Judge Williamson be removed from all cases. *See* N.T., 1/28/16, at 26. Appellant concedes that there is no direct evidence of judge shopping but suggests that the Commonwealth's actions create the appearance of impropriety. *See* Appellant's Brief at 19. Appellant contends that this constituted prosecutorial misconduct warranting dismissal. *Id.*

Generally, the Pennsylvania Supreme Court looks on judge shopping with disfavor. *See Municipal Publications, Inc. v. Court of Common Pleas of Philadelphia County*, 489 A.2d 1286, 1289 (Pa. 1985) (holding that where a judge has personal knowledge of the facts and testified as a witness, he must recuse himself and have another judge decide the issue of his impartiality, noting only in dicta, that judge shopping is condemned.); *see also Commonwealth v. Schab*, 383 A.2d 819 (Pa. 1978) (holding that neither common law nor statute empowered the Attorney General to supersede the power of the local district attorney to initiate the prosecution of a case; making a minor mention of there being no evidence of judge shopping).

However, Appellant's argument is without merit, as there is no evidence of judge shopping, and therefore no undue prejudice by the change in judicial

assignments. First, Appellant presented no evidence that the District Attorney specifically requested or preferred that Judge Lovecchio preside over Appellant's case. In fact, he had the opportunity to ask this during cross-examination and did not. More specifically, District Attorney Eric Linhardt did not request that Judge Williamson be replaced but asked that he not preside over any cases. N.T., 1/28/16, at 26. Second, when Appellant's case was mentioned in the conversation, it was in the context of several upcoming cases. Further, the trial court, when addressing this issue found that Appellant had not established prejudice. *Id.* at 27. We find no abuse of discretion in the trial court's finding that Appellant failed to prove that the change of presiding judge prejudiced him. *Municipal Publications, Inc.*, 489 A.2d at 1289; *Schab*, 383 A.2d at 819.

Moreover, we note the following. Absent a violation of Rule 8.2 of the Rules of Professional Conduct, an attorney has an obligation to report concerns with a judge's behavior. *See* Pa.R.P.C. 8.3 (providing that "[a] lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority."); *see also* Pa.R.P.C. 8.2 (providing that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge …"). Thus, we discern no abuse of the court's discretion in denying Appellant's motion to dismiss. *Municipal Publications, Inc.*, 489 A.2d at 1289; *Schab*, 383 A.2d at 819.

- 19 -

Finally, Appellant challenges other evidentiary decisions of the trial court. As discussed, *supra*, we review the evidentiary rulings of the trial court for an abuse of discretion. **See Hicks**, 151 A.3d at 224.

Appellant asserts that the court erred in permitting lay testimony concerning Instagram. **See** Appellant's Brief at 3, 19. Appellant has failed to develop this assertion in any meaningful fashion. Accordingly, we deem it waived. **Wirth**, 95 A.3d at 837; Pa.R.A.P. 2119(a).

Nevertheless, from our review of the record, it appears that Appellant objected to Ms. Yancey's testimony regarding her use of Instagram. **See** N.T., 01/28/2016, at 174 (objecting that Ms. Yancey was not qualified to discuss how Instagram works). The court overruled this objection, concluding that she could "talk about how she used [Instagram] and her understanding of how it worked." **Id.** In its Pa.R.A.P. 1925(b) opinion, the court explained further that Ms. Yancey was competent to describe her experience using Instagram, as it was not based upon any scientific, technical, or other specialized knowledge. **See** TCO, 05/24/2017, at 25 (citing in support Pa.R.E. 701). According to the trial court, Ms. Yancey testified in a manner "rationally related" to her perception and "helpful to communicating a narrative." **Id.** We agree. Ms. Yancey merely described her experience using the Instagram service, as anyone with an Instagram account would. Her testimony was not based upon scientific or technical expertise. It was helpful to understanding her subsequent explanation that the posted photographs of Mr. Ford were

concerning and prompted her to send screenshots of them to the police. **See** Pa.R.E. 701. Thus, we discern no abuse of the court's discretion.

Appellant also suggests that the court erred in admitting the photographs, as there was no reliable evidence connecting the Instagram postings to Appellant. Appellant's Brief at 20 (citing in support **United States v. Browne**, 834 F.3d 403 (3d Cir. 2016) (discussing the proper authentication of Facebook chat logs)). According to Appellant, the lay testimony from Ms. Yancey and the certificate of authenticity from Instagram were insufficient to authenticate the photographs properly.[12]

Recently, as a matter of first impression, a panel of this Court discussed the evidentiary requirements necessary to tie a social media post to an individual. **See Commonwealth v. Mangel**, --- A.3d --- , 2018 WL 1322179 (Pa. Super. 2018) (citing **Browne** favorably). Drawing upon prior precedent in which this Court has examined the proper authentication of cell phone text messages, the **Mangel** panel recognized the challenges presented in authenticating electronic communications but concluded that authentication

---

[12] Again, we admonish Appellant to preserve properly and develop his arguments. In his Pa.R.A.P. 1925(b) statement, Appellant identified three distinct issues regarding the Instagram photos, challenging (1) the admissibility of Ms. Yancey's lay testimony, (2) the authentication of the photographs, and (3) a foundation for their relevance. **See** Appellant's Pa.R.A.P. 1925(b) Statement, 12/27/2016, at 2. In his Statement of the Questions Presented, Appellant seemingly abandoned the latter two. **See** Appellant's Brief at 3, 19. Nevertheless, we shall briefly review Appellant's claim.

was possible "within the existing framework of Pa.R.E. 901 and Pennsylvania case law." ***Id.*** at *6. According to the panel,

> Initially, authentication social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. ***See In re F.P.***, 878 A.2d at 96. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender.

***Id.*** (citing also ***Commonwealth v. Koch***, 39 A.3d 996, 1005 (Pa. Super. 2011)).

Appellant's reliance upon ***Browne*** is misplaced, as the issue raised by him before the trial court is different than that addressed in ***Browne***.[13] During trial, Appellant argued that there was insufficient evidence that the photographs accurately portrayed the assault of Mr. Ford. ***See*** N.T., 1/28/16, at 219. The question being answered by the circuit court in ***Browne***, and by this Court in ***Mangel***, is how to authenticate properly text or chat message

---

[13] During Appellant's argument he clarifies his argument by stating: "The issue regarding the text messages and who posted these things, I believe, is a different issue because I think the issue of the photograph, the ideal way that this stuff comes in is by a person who was there and who could authenticate it. The fallback position is that there may be this silent witness theory that through circumstantial evidence they can identify that it supports the reliability of the photograph … There is a specific way that a photograph comes into evidence and how it has to be authenticated…under most circumstances you need somebody to come in to -- who was there who could say that this is a fair and accurate depiction as to what took place " ***See*** N.T., 1/28/16, at 216-17, 219.

evidence, mindful of the unique challenges posed by social media. The question before this Court is not whether Appellant posted the Instagram images, but whether the Instagram posts accurately portrayed Mr. Ford's assault. For this reason, the authority Appellant relies on in his brief is inapposite, and he again risks waiver of this issue.

However, photographic evidence may be authenticated by testimony that the photograph fairly and accurately depicts the incident or object portrayed. **Commonwealth. v. McKellick**, 24 A.3d 982, 986-87 (Pa. Super. 2011) (citing **Nyce v. Muffley**, 119 A.2d 530, 532 (Pa. 1956) (requiring that "[a] photograph must be verified either by the testimony of the person who took it or by another person with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time of the accident")); **see also** Pa.R.E. 901(a) ("[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

Here, the Commonwealth presented sufficient direct and circumstantial evidence tending to support the authentication of the photographs of Mr. Ford's assault. Initially, we observe that Appellant does not accurately depict the evidence adduced by the Commonwealth. In addition to testimony from Ms. Yancey and the certification from Instagram, the Commonwealth presented additional evidence of authenticity.

For example, the Commonwealth presented direct evidence of Appellant's recorded prison conversations in which Appellant discusses directing a friend to take the pictures and posting them on Instagram and in which he disputes Trooper Havens' characterization of the images. *See* N.T., 1/28/16, at 225. The Commonwealth also presented the compelling circumstantial testimony of Trooper Havens, who observed both the room and Mr. Ford on the day of the incident and could identify Mr. Ford in the photographs. *Id.* at 160-61, 222. Further, through Corporal Brown's testimony, the Commonwealth presented corroborating circumstantial photographic evidence of the hotel room, depicting blood stains, a headboard, and other background that matched the photographs posted on Instagram. *Id.* at 133-36, 222. There was also evidence presented that the bearded, black male delivering a punch to Mr. Ford in one of the photographs closely resembles Appellant. *Id.* at 223. Based on this evidence, the court did not err in admitting the Instagram posts, as the evidence was properly authenticated. *McKellick*, 24 A.3d at 986-*87.* Thus, we discern no abuse of discretion. *Koch*, 39 A.3d at 1005.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2018

- 24 -