447 A.2d 1387

**COMMONWEALTH of Pennsylvania**

v.

**Lisa POINDEXTER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed July 16, 1982.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

On January 24, 1979, appellant, Lisa Poindexter, was found guilty, by a jury, of arson, criminal conspiracy and burglary. Post-verdict motions were subsequently filed and denied. Poindexter was sentenced to serve a term of imprisonment of five to ten years. This appeal followed.

Poindexter raises four questions on appeal. First, she asserts that the trial court erred in refusing to discharge her under Pennsylvania Rule of Criminal Procedure 141(d). Second, that the trial court erred in not discharging her under Pennsylvania Rule of Criminal Procedure 1100. Third, that the Commonwealth's attorney engaged in prosecutorial misconduct. Fourth, that the trial court's instructions to the jury defining reasonable doubt were improper. We are not persuaded that any such error was committed by the trial court. Accordingly, we affirm.

On February 22, 1978, Poindexter was arrested and charged with attempted murder, arson, risking a catastrophe, recklessly endangering another person, burglary, criminal conspiracy, and criminal mischief. These charges were subsequently dropped after the trial court held that the Commonwealth failed to establish a *prima facie* case against Poindexter. On August 8, 1978, the Commonwealth obtained a warrant to rearrest Poindexter on the same charges. She was rearrested on September 20, 1978. After a preliminary hearing, the trial court ordered Poindexter held for trial.

The record discloses that on February 21 and 22, 1978, Poindexter attended the trial of Gregory Gainor. Gainor was convicted. When the verdict was announced, Poindexter became hysterical and had to be subdued by sheriff's deputies. At Gainor's trial, one of the Commonwealth's witnesses was Emma Reeves. On the evening of February 22, 1978, when Ms. Reeves returned home she discovered that a fire had been set in her apartment. Witnesses placed Poindexter near Reeves's apartment building near the time of the fire. An assistant fire marshall testified that the fire was of an incendiary origin.

Poindexter moved that the charges brought against her be dismissed under Pa.R.Crim.P. 141(d). She contends that the trial court improperly denied her motion. Specifically, she asserts she should have been discharged because costs were not paid after the charges brought in the initial arrest were dropped and she was discharged. Rule 141(d) was applied to

a case factually very similar to this one in *Commonwealth v. Cartagena*, 482 Pa. 6, 15–16, 393 A.2d 350, 355 (1978), wherein our Supreme Court said:

> Appellant, however, has omitted the two sentences preceding the above-quoted portion, which state:
>
>> "If a *prima facie* case of the defendant's guilt is not established at the preliminary hearing, and no application for continuance, supported by reasonable grounds, is made by an interested person, and no reason for a continuance otherwise appears, the issuing authority shall discharge the defendant; *and if he finds that the prosecution was brought without probable cause, the issuing authority shall order affiant to pay the cost of the prosecution.* No further proceedings may be had before any issuing authority on the same cause until the affiant in the original proceeding has repaid the costs."
>> Pa.R.Crim.P. 141(3). (Emphasis added).
>
> In the instant case, the first prosecution was dismissed because of the failure to establish a *prima facie* case and not because of the lack of probable cause to institute the criminal proceedings. Appellant's argument is thus meritless.

Accordingly, the initial prosecution, herein, was dropped because of the failure of the Commonwealth to establish a prima facie case and not because of a lack of a probable cause. Therefore, Poindexter's argument is meritless. See also: *Commonwealth v. Cobbs*, 288 Pa.Super. 155, 431 A.2d 335 (1981); *Commonwealth v. Scott*, 279 Pa.Super. 8, 420 A.2d 717 (1980).

Next, Poindexter argues that Pa.R.Crim.P. 1100 was violated because her trial did not commence within 180 days of the filing of the initial complaint. It is clear that trial did commence within 180 days of the filing of the second complaint. In *Commonwealth v. Braithwaite*, 253 Pa.Super. 447, 450, 385 A.2d 423, 424–425 (1978).

We find the instant situation to be controlled by our decision in *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976). In *Mumich*, we held that the pre-

scribed period of Rule 1100 commenced with the filing of a subsequent complaint when an initial complaint had been properly dismissed by a magistrate. We tempered our holding in *Mumich*, however, with the recognition that the prompt trial period would attach from the date of the second complaint only if (1) the first complaint was properly dismissed and (2) the record fails to reflect an improper prosecutorial design to circumvent the mandate of Rule 1100.

We are satisfied that the first complaint posed against Poindexter was properly dismissed and that the prosecution did not seek to circumvent the mandate of Rule 1100. We are unable to conclude that the Rule was violated. *Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367 (1981).[1]

■ Poindexter argues also that the prosecuting attorney engaged in prosecutorial misconduct by making the following statement.

This case involves a fire and we all know how serious a fire is. We all know how serious arson is.

In this case, it is particularly offensive because this was not just a regular arson. This came out of one of the

---

**1.** Poindexter argues that the prosecution sought to circumvent Rule 1100 because a key witness not called at the preliminary hearing following the first arrest but called at the preliminary hearing following the second arrest supplied evidence crucial to the establishment of a prima facie case. That witness was an assistant district attorney who, she claims, clearly could have been called to testify at the first hearing. She asserts that this fact coupled with the five month delay before the second complaint was filed demonstrates the Commonwealth's improper design to circumvent Rule 1100. We are satisfied that the testimony of the assistant district attorney was not required to establish the *prima facie* case against Poindexter. Therefore, we find that the Commonwealth did not exhibit an effort to circumvent Rule 1100. Furthermore, we do not hold that the delays before the second complaint was filed and arrest occurred establish that the Commonwealth sought to circumvent Rule 1100.

Poindexter also claims that she was prejudiced by the delay because an alibi witness could not be found after her rearrest. Our review of the record indicates that there was no testimony submitted which demonstrated what that witness would have said. Accordingly, we are unable to determine how Poindexter was prejudiced. We are convinced that a reversal of the trial court's decision is not required by these circumstances.

most wicked and depraved motions [sic] tht it can come from, against one coming to City Hall and speaking out in a criminal case.

We know that the whole jury trial system is the bedrock of a civilized society. We don't resolve our disputes in the street. We bring them into the Courtroom, where the people are nicely dressed and there is carpet.

We do that by bringing witnesses to the stand to testify. They take an oath and take the stand and, hopefully, tell the truth.

The reason this was depraved and wicked is because it was against someone who came into Court to tell the truth. If this system is going to survive, they must come into Court freely, ladies and gentlemen, and not worry whether their home was burned down because someone didn't like the verdict.

I would ask you . . . to tell her (the defendant) by your verdict that you could not retaliate against a witness or in a case and you could not go to someone's apartment and destroy the contents, or set fire to one's house and show Lisa Poindexter there is justice.

The record indicates that no objection was made to these remarks at trial. Accordingly, the issue has not been properly preserved for appellate review. *Commonwealth v. Murphy*, 493 Pa. 35, 425 A.2d 352 (1981); *Commonwealth v. Jarvis*, 482 Pa. 598, 394 A.2d 483 (1978); *Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976).

■ Finally, Poindexter asserts that the reasonable doubt charge made by the court to the jury was improper. The court charged the jury in the following manner:

A reasonable doubt is such a doubt as would restrain a reasonable person from acting in a matter of importance to himself.

It is not such a doubt as one might summon for the purpose of escaping the consequences of an unpleasant verdict, but as the term implies, it is a doubt that is reasonable and it is an honest doubt, arising out of the evidence, itself.

Essentially, she contends that the use of the word "restrain" makes the charge improper. We said in *Commonwealth v. Moore*, 271 Pa.Super. 494, 498, 414 A.2d 362, 364 (1979):

> Appellant next contends that his trial counsel was ineffective in failing to object to the lower court's jury instruction defining reasonable doubt. The trial judge defined reasonable doubt as "that kind of doubt that would cause a reasonable man ... to be restrained from acting", which is one of two formulations expressly endorsed by the Supreme Court. *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974).

We are satisfied that the reasonable doubt charge to the jury was proper.

The judgment of sentence of the trial court is affirmed.

SPAETH, J., files concurring opinion.

SPAETH, Judge, concurring:

I agree that the judgments of sentence should be affirmed. I think, however, that some further comment on the Rule 1100 question is in order.

On February 23, 1978, appellant was charged in a criminal complaint with attempted murder, arson, risking a catastrophe, recklessly endangering another person, burglary, criminal conspiracy, and criminal mischief. On March 8 a preliminary hearing was held, at which the following evidence was introduced against her.

Emma Jean Reeves testified that on February 22, 1978, at about 8:00 a. m., she left her apartment in fine condition and went to City Hall to testify as a witness at a trial there. She knew appellant, and appellant was in the court room while she testified. At 8:30 p. m. she returned to find that her apartment had been broken into and set aflame. N.T. 3/8/78 at 5–6.

Raymond Hopkins testified that he lived in the first floor apartment below Emma Reeves. At about 7:00 p. m. on February 22, 1978, he heard a noise at the front door of the house, which sounded like someone breaking in. He then

heard "a few foot tracks like a terrible noise upstairs," *id.* 18, and saw a man and a woman run out the front door. He was only able to see them from behind. He was blind in one eye and had impaired vision in the other. From the color of her hair he nonetheless thought that the woman was appellant. *Id.* 22–23. After seeing the couple flee, Hopkins returned to his room and watched television. At approximately 7:30 p. m. he heard someone yell, "Fire upstairs," and he left the house. *Id.* at 24. He saw smoke coming from the second floor where Emma Reeves lived. Hopkins estimated that ten or fifteen minutes elapsed between the time he saw the couple leave the house and the time he saw smoke coming from the second floor. *Id.* at 25.

Catherine Goode, who lived two doors away, testified that shortly after seeing a man break into the house where Emma Reeves and Raymond Hopkins had their apartments, she saw appellant and a man in front of her house.

Lieutenant Lawrence Dove of the Philadelphia Fire Department testified that the Reeves apartment had been broken into by force, and that the fire started in her apartment and was of incendiary origin.

The court concluded that this evidence failed to make out a *prima facie* case against appellant. Although the issue is perhaps close, I think this conclusion was correct. *Cf.* Majority op. at 1389 n. 1.

On August 8, 1978, a second criminal complaint was filed against appellant. She was arrested on September 20, and on October 6 a second preliminary hearing was held. Raymond Hopkins, Catherine Goode, and Lieutenant Dove again testified. Their testimony was substantially the same as their testimony at the first hearing. The only additional evidence provided at the second hearing was testimony by Judith Frankel Rubino. This testimony demonstrated that appellant had a motive to commit the crimes alleged. Rubino, a Philadelphia assistant district attorney, testified that on February 21 and 22, 1978, she had prosecuted Gregory Gainor for murder. Emma Jean Reeves was a witness for the Commonwealth. Rubino testified that appellant was in the courtroom, and that when the verdict of guilty was

returned, she became hysterical, "yelling and screaming," and had to be physically restrained. N.T. 10/6/78 at 43.

At the conclusion of this evidence the court found a *prima facie* case against appellant for arson, burglary, conspiracy, and criminal mischief. *Id.* at 53–54.

If the day for computing the Rule 1100 period commenced on the date the first complaint was filed, trial should have commenced on August 22, 1978. If, however, the period commenced on the date the second complaint was filed, trial had only to commence on February 5, 1979. In fact appellant was brought to trial on January 22, 1979.

Appellant argues that "the Commonwealth delayed making out a *prima facie* case until weeks after the 180 day period dating from the first complaint . . . . Since there was no apparent reason for the delay except to avoid [Rule 1100], the 180 day period runs from the first complaint." Brief for Appellant at 7. I agree that the Commonwealth's delay in filing the second complaint when the additional evidence needed to make out a *prima facie* case—the testimony of the assistant district attorney—was within its control does show a disregard of appellant's right to a speedy trial. I do not, however, believe that it shows that the Commonwealth at the first preliminary hearing acted in bad faith or tried to circumvent the mandate of Rule 1100. Indeed the evidence is to the contrary. The Commonwealth on direct examination sought to elicit from Emma Jean Reeves the same evidence it was ultimately able to obtain from Rubino. N.T. 3/8/78 at 8. The prosecutor asked Reeves what appellant's reaction was to the jury's verdict in the Gainor murder trial. Reeves testified, however, that she was not in the court room at that time and therefore did not know. Further evidence of the Commonwealth's good faith is that the first preliminary hearing promptly followed the filing of the first complaint. I find no basis for inferring that as a device to circumvent Rule 1100 the Commonwealth sought at the first preliminary hearing to have its complaint dismissed for insufficient evidence.

As regards its delay in filing the second complaint, the Commonwealth asserts that "once the [first] complaint is

properly dismissed as here, it is irrelevant when the rearrest occurs." Brief for Commonwealth 8–9 (footnote omitted). I am by no means sure that this is true. Whether the Commonwealth has a duty to act with due diligence in prosecuting a case that has been dismissed at a preliminary hearing because of the failure to present sufficient evidence is a novel issue. While the Commonwealth has discretion in deciding whether to prosecute some one in the first instance, once it has decided to, as shown by its filing a complaint, it should, it seems to me, proceed promptly. Failing to proceed promptly when the Commonwealth has within its control the additional evidence needed to make out a *prima facie* case is contrary at least to the spirit, if not the letter, of Rule 1100. *See generally Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972); *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977); *Commonwealth v. Collins,* 266 Pa.Superior Ct. 340, 404 A.2d 1320 (1979).

I do not understand the majority opinion to decide this issue. Nor do I decide it. Appellant's argument focuses on the Commonwealth's conduct at the first preliminary hearing. The issue of the effect, if any, of the Commonwealth's ensuing delay is therefore not before us.