J-S57037-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P.65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KHALIL BRADLEY, | : | |
| | : | |
| Appellant | : | No. 2304 EDA 2017 |

Appeal from the Judgment of Sentence February 21, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002005-2016

BEFORE:  PANELLA, J., PLATT, J.* and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 21, 2019**

Khalil Bradley (Appellant) appeals from the judgment of sentence entered February 21, 2017, after he was found guilty of first-degree murder, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, possessing an instrument of a crime, and recklessly endangering another person.  We affirm.

As we write for the parties, we need not restate the underlying facts of the case herein.  Suffice it to say that the factual summary offered in the trial court's opinion accurately summarizes the evidence offered at trial. *See* Trial Court Opinion, 1/22/2018, 2-4.  Briefly, Appellant was charged with, *inter alia*, first-degree murder in the shooting death of Jai Rivera.  *Id.* at 3.  Rivera, who sold drugs on the same block as rival drug dealers, was

_____
* Retired Senior Judge assigned to the Superior Court

shot fifteen times by Appellant, a supposed "enforcer" for the rival drug dealers. *Id.* at 2-3.

Following a jury trial, Appellant was found guilty of the aforementioned crimes. On February 21, 2017, Appellant was sentenced to a mandatory term of life in prison for first-degree murder, plus an aggregate consecutive term of six and one-half to 19 years' imprisonment on the remaining counts.

Appellant timely filed a post-sentence motion alleging, *inter alia*, that the jury's verdict was against the weight of the evidence. Post-Sentence Motion, 3/1/2017, at 2 (unnumbered). On June 21, 2017, the trial court denied Appellant's motion. Appellant then timely filed a notice of appeal.

> On July 20, 2017, the [trial] court issued an order pursuant to Pa.R.A.P. 1925(b) directing [Appellant] to file a concise statement of errors complained of on appeal by August 10, 2017. On September 11, 2017, after [Appellant] failed to timely file a Rule 1925(b) statement, the [trial] court filed an opinion finding that all of [Appellant's] claims had been waived. On September 18, 2017, the Superior Court ordered th[e trial] court to determine if counsel for [Appellant], Evan T.L. Hughes, Esquire had abandoned his client, and to take action, as necessary, to protect [Appellant's] appellate rights. Pursuant to that order, the [trial] court held a hearing on October 13, 2017. Following the hearing, the [trial] court relieved Mr. Hughes as counsel and appointed new counsel, Gary S. Server, Esquire to represent [Appellant] on appeal. On November 14, 2017, the Superior Court remanded this matter for [Appellant] to file a Rule 1925(b) statement and for th[e trial] court to file a supplemental opinion.

Trial Court Opinion, 1/22/2018, at 1-2 (unnecessary capitalization omitted). Both the trial court and Appellant complied with this Court's order and this case is now ripe for disposition.[1]

On appeal, Appellant argues that: (1) the verdict was against the weight of the evidence, and (2) a statement made during the Commonwealth's closing argument amounted to prosecutorial misconduct. Appellant's Brief at 6. We review Appellant's issues mindful of the following.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence

---

[1] Also before this Court's is Appellant's "Unopposed Motion for Leave to have the Panel Decide the Merits of the Briefs Previously Submitted." By way of further background, prior to this Court's review of Appellant's appeal but after the filing of Appellant's brief, Attorney Server filed a motion to withdraw as court-appointed counsel, averring, *inter alia*, that he was unsure if Appellant was still entitled to court-appointed representation because Attorney Server had recently become aware that Appellant had obtained private counsel in preparation for potential post-conviction proceedings. Motion to Withdraw Court Appointed Counsel, 9/30/2018. Upon review of counsel's motion, this Court remanded this matter "to the trial court to inquire if Appellant's *in forma pauperis* status has changed and determine if Appellant is still eligible for court-appointed counsel." Order, 10/12/2018 *citing* Pa.R.A.P. 555.

On remand, the trial court held a hearing and determined that Appellant was no longer entitled to court-appointed counsel. Notice of Findings and Action Taken Pursuant to Superior Court Remand, 11/9/2018, at 1 (unnumbered). The trial court provided Appellant 60 days from the date of the order to obtain alternative counsel. *Id.* at 2. On November 21, 2018, Attorney Daniel Silverman entered his appearance. On January 10, 2018, Appellant, through Attorney Silverman, filed the aforementioned motion. Upon review, we grant Appellant's motion and address the merits of the claims set forth in Appellant's counseled appellate brief filed by Attorney Server prior to his withdrawal.

presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted). *See also Commonwealth v. Britton*, 134 A.3d 83, 86 (Pa. Super. 2016) ("The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.") (citation omitted). "A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant." *Commonwealth v. Chamberlain*, 30 A.3d 381, 396 (Pa. 2011).

Regarding claims of prosecutorial misconduct, "[i]f the defendant thinks the prosecutor has done something objectionable, he may object, the trial court rules, and the ruling—not the underlying conduct—is what is reviewed on appeal." *Commonwealth v. Tedford*, 960 A.2d 1, 29 (Pa. 2008).

> With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that in reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (internal citations and quotation marks omitted). Failure to object to the alleged misconduct will result in waiver on appeal. *See Tedford*, *supra*. *See also Commonwealth v. Poindexter*, 447 A.2d 1387, 1390 (Pa. Super. 1982).

Upon our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Glenn B. Bronson comprehensively and correctly addresses and disposes of Appellant's issues and supporting arguments and evidences no abuse of discretion or errors of law. *See* Trial Court Opinion, 1/22/2018, at 4-9 (concluding it did not abuse its discretion in finding the jury's verdict was not against the weight of the evidence and that it was within the province of the jury as fact-finder to resolve conflicting testimony and make credibility determinations); *Id.* 9-10 (finding Appellant's failure to object to the prosecutor's remarks at trial resulted in waiver).

Accordingly, we adopt the trial court's opinion, filed on January 22, 2018, as our own and, based upon the reasons stated therein, affirm Appellant's judgment of sentence. The parties shall attach a copy of the trial

court's January 22, 2018 opinion to this memorandum in the event of future proceedings.

Judgment of sentence affirmed.

Judge Platt did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/19

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

**FILED**

JAN 2 2 2018

Office of Judicial Records
Appeals/Post Trial

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0002005-2016 |
| | : | |
| v. | : | |
| | : | |
| KHALIL BRADLEY | : | |



CP-51-CR-0002005-2016 Comm. v. Bradley, Khalil J.
Opinion

8057764961

OPINION

BRONSON, J.                                        January 22, 2018

On February 10, 2017, following a jury trial before this Court, defendant Khalil Bradley was convicted of one count each of murder of the first degree (18 Pa.C.S. § 2502(a)), carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)), carrying a firearm on a public street or public property in Philadelphia (18 Pa.C.S. § 6108), possessing an instrument of crime (18 Pa.C.S. § 907(a)), and recklessly endangering another person (18 Pa.C.S. § 2705). On February 21, 2017, the Court imposed the mandatory sentence of life in prison for the first-degree murder charge (18 Pa.C.S. § 1102(a)(1)), with consecutive sentences of 3 ½ to 7 years for carrying a firearm without a license, 1 to 5 years for carrying a firearm on a public street or public property in Philadelphia, 1 to 5 years for the possessing an instrument of crime, and 1 to 2 years for recklessly endangering another person, for an aggregate sentence of life plus 6 ½ to 19 years in prison.

Defendant filed a timely post-sentence motion, which the Court denied on June 28, 2017. On July 20, 2017, the Court issued an order pursuant to Pa.R.A.P. 1925(b) directing defendant to file a Concise Statement of Errors Complained of on Appeal by August 10, 2017. On September

11, 2017, after defendant failed to timely file a Rule 1925(b) statement, the Court filed an opinion finding that all of defendant's claims had been waived.

On September 18, 2017, the Superior Court ordered this Court to determine if counsel for defendant, Evan T.L. Hughes, Esquire had abandoned his client, and to take action, as necessary, to protect defendant's appellate rights. Pursuant to that order, the Court held a hearing on October 13, 2017. Following the hearing, the Court relieved Mr. Hughes as counsel and appointed new counsel, Gary S. Server, Esquire to represent defendant on appeal. On November 14, 2017, the Superior Court remanded this matter for defendant to file a Rule 1925(b) statement and for this Court to file a supplemental opinion.

Defendant has now raised the following grounds for relief on appeal: 1) the verdict, in its entirety, is against the weight of the evidence; and 2) the prosecutor engaged in misconduct during closing argument. Defendant's 1925(B) Statement ("Statement of Errors") at ¶¶ 1-2. For the reasons set forth below, defendant's claims are without merit and the judgment of sentence should be affirmed.

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of Philadelphia Police Detectives Thorsten Lucke and James Burke, Philadelphia Police Officers Gary Guaraldo and Andrew Andrejczak, Philadelphia Deputy Chief Medical Examiner Dr. Albert Chu, and Nakia Abdullah, Nafis Brown, Kareema Hill, and James Rivera. Defendant presented the testimony of William Everman, Donnell Booker, and Jerome Maynard. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

The victim, Jai Rivera, sold drugs on the 1800 block of Judson Street in Philadelphia. N.T. 2/7/17 at 79-80. Three brothers, Shawn (also known as "Stud"), Leonard (also known as

2

"Huggie"), and Jermain (also known as "Main"), also sold drugs on the street, and did not want Rivera to sell there. N.T. 2/7/17 at 80-81, 88.

On November 7, 2015, three days before the murder, Rivera was leaving his home, when an "employee" of the brothers, Damon Jones (also known as "Dame") approached him and told him that he could not sell drugs on the block. N.T. 2/7/17 at 87; N.T. 2/8/17 at 104. In response, Rivera shot Dame in his leg. N.T. 2/7/17 at 88-89. Stud witnessed the shooting and shot back at Rivera; however, Rivera escaped unscathed. N.T. 2/7/17 at 88-89

Defendant was an "enforcer" for the brothers and was paid to kill Rivera. N.T. 2/7/17 at 139. On November 9, 2015, the day before Rivera was killed, defendant was standing with a group of men on the 2000 block of Judson Street, while he plotted Rivera's murder. N.T. 2/7/17 at 125-127. He wanted to do it right then and there; however, his friend, Robert Thomas (also known as "Little Rob"), who was also involved in the plot, advised him not to, because it would hurt drug sales in the area. N.T. 2/7/17 at 8, 126-128, 139.

The following day, November 10, 2015, at approximately 3:36 P.M., Rivera was standing on the 2100 block of West Dauphin Street in Philadelphia and talking to Little Rob, when defendant approached him from behind and began to fire shots at him. N.T. 2/7/17 at 24-25, 179; N.T. 2/8/17 at 74. Rivera suffered fifteen gunshot wounds. N.T. 2/8/17 at 12. He was struck once in the head, once in the right thigh, twice in the right forearm, and eleven times in the torso, hitting his lungs, stomach, pancreas, left kidney, spleen, small intestine, spine, pelvis, and multiple ribs. N.T. 2/8/17 at 13. He was taken to Temple University Hospital, where he was pronounced dead. N.T. 2/8/17 at 12. Although Little Rob threw himself against a wall to avoid the gunfire, a bullet struck him in the foot. N.T. 2/8/17 at 74. Little Rob went from the scene of the murder to Temple University Hospital for treatment. N.T. 2/8/17 at 74, 103-104.

3

Philadelphia Police Detectives then conducted an investigation of the shooting. N.T. 2/8/17 at 68. During the course of the investigation, detectives recovered a video recording of the incident. N.T. 2/8/17 at 71; *see* Commonwealth Exhibit C-29. In addition, Nakia Abdullah, Nafis Brown, and Kareema Hill positively identified defendant as the shooter. N.T. 2/7/17 at 98, 133, 2/8/17 at 85-86.

## II. DISCUSSION

### A. *Weight of the Evidence*

Defendant first claims that the verdict was against the weight of the evidence. Statement of Errors at ¶ 1. The specific bases for his claim are as follows:

> [W]here there was credible eyewitness testimony that the defendant was not the shooter, where there was credible evidence that Nafis Brown possessed a firearm similar to the .40 caliber Glock used to kill the victim, where Nafis Brown is caught driving the get away [sic] vehicle a few days after the murder, where the defendant was identified from unclear video images and by unduly suggestive and inherently unreliable identification procedures and where the 911 caller Kareema Hill who knew the defendant did not identify the defendant by name during the call.

Statement of Errors at ¶ 1. This claim is without merit.

It is well-established that a new trial may only be granted by the trial court where the verdict was so contrary to the weight of the evidence as to "shock one's sense of justice." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004), *appeal denied*, 878 A.2d 864 (Pa. 2005) (quoting *Commonwealth v. Hunter*, 554 A.2d 550, 555) (Pa. Super. 1989)). Moreover, credibility determinations are solely within the province of the fact-finder, and "an appellate court cannot substitute its judgment for that of the finder of fact." *Commonwealth v. Taylor*, 63 A.3d 327, 330 (Pa. Super. 2013) (quoting *Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa. Super. 2012)). In considering a claim that the trial court erred in refusing to find that a verdict was against the weight of the evidence, "appellate review is limited to whether the trial

4

court palpably abused its discretion in ruling on the weight claim." *Id.* (quoting *Shaffer*, 40 A.3d at 1253).

Here, defendant offers four specific arguments in support of his weight of the evidence claim. First, he avers that there was credible eyewitness testimony that he was not the shooter. Statement of Errors at ¶ 1. It is true that two defense eyewitnesses testified that defendant was not the shooter. N.T. 2/8/17 at 157, 201-202. First, Donnell Booker testified that he was in a car on Dauphin Street, and then went into a house on the corner before the shooting occurred. N.T. 2/8/17 at 151. Once he was in the house, he heard gunshots. *Id.* He claimed that he could see the shooter's face and that the shooter was not defendant. N.T. 2/8/17 at 151-152. However, Booker gave a signed statement to a defense investigator about two weeks before the trial. N.T. 2/8/17 at 146-148. In that statement he admitted that he did not look out the window until after the shooting stopped. N.T. 2/8/17 at 176-178. He was not a credible witness.

Second, Jerome Maynard testified that he was standing on the street prior to the shooting, when he observed a male walk up behind the victim and start shooting. N.T. 2/8/17 at 201. He claimed that while the shooter looked familiar to him, he did not know defendant. *Id.* Therefore, he was "1000 percent" sure that defendant was not the shooter. N.T. 2/8/17 at 202. Maynard came forward with this information only the day prior to his testimony, claiming that he was asked to testify after a trial spectator, Lee Robinson, saw him in the video of the incident when it was played at trial. N.T. 2/8/17 at 209-210. However, all spectators at trial provided photo identification to the court staff, and a review of the identifications revealed that no one named Lee Robinson was ever present at trial. N.T. 2/8/17 at 223.

Accordingly, the jury was free to disregard both Booker and Maynard's testimony as incredible and had ample reason to do so. *See Taylor*, 63 A.3d at 330. Moreover, there was

5

compelling evidence that defendant shot and killed Rivera. First, the Commonwealth presented the statement of eyewitness Kareema Hill, who called 911 following the shooting. N.T. 2/7/17 at 179-192. Hill told detectives that she was walking onto Dauphin Street when she heard gunshots and saw the shooter firing shots at Rivera. N.T. 2/7/17 at 179-181. She ran away from the scene, and as she was running, she looked back and saw the shooter running in the same direction. N.T. 2/7/17 at 182. Hill identified defendant as the shooter in a photo array, remarking that she was "very confident. Got a real good look at him." N.T. 2/7/17 at 190; 2/8/17 at 85-86.

It is true that at trial Hill recanted the majority of the statement and identification that she had made to the police. N.T. 2/7/17 at 172, 186, 191. However, her signed statement was admitted at trial during her testimony. N.T. 2/7/17 at 177-188. This statement was admissible for its truth as a prior inconsistent statement that was signed and adopted by the declarant. *See* Pa.R.E. 803.1(1)(b). It is well-established that where a witness at trial recants a statement she made to police, the fact-finder is "free to evaluate both the [witness's] statement to police as well as [her] testimony at trial recanting that statement, and [is] free to believe all, part, or none of the evidence." *Commonwealth v. Hanible*, 836 A.2d 36, 39 (Pa. 2003). Such recantations are "notoriously unreliable." *Commonwealth v. Johnson*, 966 A.2d 523, 541 (Pa. 2009).

The Commonwealth also presented additional identification testimony that corroborated Hill's identification. As mentioned above, at trial, a video recording of the entire incident was played for the jury. N.T. 2/7/17 at 19-20; N.T. 2/8/17 at 71; *see* Commonwealth Exhibit C-29. Nakia Abdullah, Rivera's girlfriend, identified defendant as the shooter from the video. N.T. 2/7/17 at 77, 98. Abdullah had known defendant for years and was able to identify him as the shooter from his body language and walk. N.T. 2/7/17 at 98-99. In addition, Nafis Brown,

6

defendant's friend, also identified defendant as the shooter from the video. N.T. 2/7/17 at 121, 133-134. He was able to identify defendant from his clothes and walk. N.T. 2/7/17 at 134. Brown also testified that he was with defendant when defendant and Little Rob discussed their plot to kill Rivera. N.T. 2/7/17 at 125-126. In addition, Brown testified that he called defendant after the murder, and defendant told him that Rivera had been killed, stating: "You know how I work." N.T. 2/7/17 at 124. Given this compelling evidence that defendant was the shooter, the contrary testimony of the defense witnesses did not cause the jury's verdict to shock the conscience of the Court.

Defendant next claims that the verdict was against the weight of the evidence because "there was credible evidence that Nafis Brown possessed a firearm similar to the .40 caliber Glock used to kill the victim[.]" Statement of Errors at ¶ 1. It is true that the murder weapon was determined to be a .40 caliber Glock-type weapon, and that at trial, defendant introduced a picture of Brown holding a .40 caliber Glock. N.T. 2/8/17 at 43, 53-54, 58-63; *see also* Defense Exhibit D-2. In addition, one week after the shooting, Brown was pulled over driving a van that was involved in the murder, and a .40 caliber gun was found in the vehicle. N.T. 2/8/17 at 98-100. However, forensic analysis demonstrated that the recovered gun was not the murder weapon. N.T. 2/8/17 at 54, 100. Accordingly, Brown's possession of that weapon did not undermine the Commonwealth's evidence.

Defendant next attacks the weight of the evidence on the ground that Nafis Brown was "caught driving the get away [sic] vehicle a few days after the murder." Statement of Errors at ¶ 1. It is true, as stated above, that one week after the murder, Brown was pulled over in a van that was involved in the murder. In particular, video surveillance of the murder depicted the van at the scene of the murder at the time of the shooting. N.T. 2/8/17 at 49, 103. The video also

7

showed Little Rob, who had plotted the killing along with defendant, talking to Rivera as Rivera was shot, and then showed Little Rob hobbling over to the van after the shooting, apparently having been accidentally shot by defendant. N.T. 2/8/17 at 74. The van was then captured on video leaving the scene and dropping Little Rob off at Temple University Hospital's Emergency Room. N.T. 2/8/17 at 74, 103-104.; N.T. 2/7/17 at 29-30. Brown, however, had a plausible explanation for being in possession of that van. He denied having any knowledge that the vehicle was used in a homicide, and stated that he had borrowed the van from Little Rob because his own car was unavailable. N.T. 2/8/17 at 100, N.T. 2/7/17 at 138. Detectives determined that the van was not registered to Brown, but rather, the registered owner was Little Rob's brother, Kareem Myers. N.T. 2/8/17 at 99. Hence, the evidence of Brown being arrested in the van one week after the homicide did not, as defendant now claims, create doubt about the compelling evidence demonstrating that defendant, and not Brown, was the shooter.

Finally, defendant claims that the verdict was against the weight of the evidence because "defendant was identified from unclear video images and by unduly suggestive and inherently unreliable identification procedures and where the 911 caller Kareema Hill who knew the defendant did not identify the defendant by name during the call." Statement of Errors at ¶ 1. It is true that defendant was identified as the shooter by Nafis Brown and Nakia Abdullah from video footage. However, as discussed above, both of these witnesses were unequivocal in their identifications. N.T. 2/7/17 at 98-99, 133-134. Moreover, Abdullah had known defendant for years and had lived on the same block with him. N.T. 2/7/17 at 98. Brown had grown up with defendant and was a close friend. N.T. 2/7/17 at 121. Accordingly, the identifications of these two witnesses were strong evidence.

8

In addition, as discussed above, Kareema Hill, an eye-witness, identified defendant in a photo array, stating that she was confident in the identification because she got a good look at the shooter. N.T. 2/7/17 at 190; 2/8/17 at 85-86. Moreover, when interviewing Hill, detectives employed a double blind identification procedure, having a person with no information about the murder investigation show Hill the photos. N.T. 2/8/17 at 83. Because the detective showing the array did not even know who the suspect was, there was no possibility that the procedure would be suggestive. *Id.*

Finally, Hill's credibility was not undermined by her failure to identify defendant by name when she called 9-1-1. Hill credibly testified that her sole contact with defendant prior to the shooting was seeing him around the neighborhood a few times. N.T. 2/7/17 at 197-198, 203-204. Hence, her failure to identify defendant by name when she called 9-1-1 was fully consistent with the evidence in the case.

Accordingly, the evidence fully supported the jury's verdict, and therefore, the Court did not abuse its discretion in denying defendant's motion for a new trial.

B. *Prosecutorial Misconduct*

Defendant next alleges that "[t]he prosecutor engaged in misconduct when she expressed her personal opinion during closing argument that defense eyewitness evidence from Jerome Maynard 'was the most ridiculous testimony I have ever heard. It was so ridiculous that it reminded me to when I was back in law school.' N.T. 2/10/17, 61, line 9-11." Statement of Errors at ¶ 2.

A review of the record reveals that defendant did not object to this, nor to any other portion of the Commonwealth's closing argument at trial. *See* N.T. 2/10/17 at 58-107. Because defendant raises his claim for the first time on appeal, it is waived. *See* Pa.R.A.P. 302(a)

9

("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Hankerson,* 118 A.3d 415, 420 (Pa. Super. 2015).

## III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

10

Commonwealth v. Khalil Bradley
Type of Order: 1925(a) Opinion

CP-51-CR-0002005-2016

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

> Gary S. Server, Esquire
> 52103 Delaire Landing
> Philadelphia, PA 19114

Type of Service: ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**District Attorney(s):**

> Lawrence S. Krasner, Esquire
> District Attorney of Philadelphia
> Philadelphia District Attorney's Office
> Three South Penn Square
> Philadelphia, PA 19107

Type of Service: ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**Additional Counsel/Party:**

> Joseph D. Seletyn, Esquire
> Prothonotary
> Office of the Prothonotary – Superior Court
> 530 Walnut Street, Suite 315
> Philadelphia, PA 19106

Type of Service: ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

Dated: **January 22, 2018**

Kaitlin D. Shire
Law Clerk to Hon. Glenn B. Bronson